NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY
*vs.* FREDERICK LEYLAND AND COMPANY, Limited.

Suffolk. November 12, 15, 1915. — January 17, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Agency*, Scope of authority, Ratification. *Steamship Company. Reference and Referee. Contract*, Validity.

An agent in Boston, to whom a foreign steamship company had given a general power of attorney appointing him for it "and in its name and stead to manage and transact its business" in the United States, and authorizing him, among other things, for it "and in its name to make, sign and seal contracts in the ordinary course of the company's business . . . and . . . to bring or defend, compromise, or abandon, actions at law, in equity or admiralty," has power to make an agreement with a railroad company providing for a reference to the interstate commerce commission of the question whether the steamship company was liable to pay to the railroad company certain storage charges caused by certain freight remaining in the possession of the railroad company by reason of a strike among the employees of the steamship company beyond a period of thirty days during which, by a storage tariff approved by the interstate commerce commission, the steamship company was allowed free storage and beyond which by that tariff a certain charge should be made, and also providing that, pending the determination of that question of liability, the payment of the charges should be held in abeyance, and that, if it should be decided by the commission that the railroad company was entitled to charge the storage, the steamship company would pay for it regardless of who might be liable for it; and such contract is valid and enforceable.

In this case, where it appeared that the agent of the steamship company and a representative of the railroad company had joined in referring such dispute to the commission, that on a May 3 the agent of the steamship company had informed his principal that he had done so, that the steamship company had made no objection and had not undertaken to repudiate the agreement made by its agent until the following October 8, which was about four months after the commission had rendered its decision adverse to the steamship company and had notified the agent, it *was said* that it well could have been found that the steamship company had ratified the acts of its agent.

DE COURCY, J. The plaintiff is an interstate carrier, with an ocean terminal at East Boston, where it delivers export freight to, and receives import freight from, the defendant, a foreign steamship corporation. During 1911 and 1912 the defendant was using one of the plaintiff's piers under a written agreement which provided, among other things, that "delivery of freight by said

Railroad Company to said Steamship Company shall be considered to have been effected when the same has been unloaded from the cars into the sheds on the pier or piers occupied in whole or in part by the said steamship company." The course of procedure was, that the plaintiff notified the defendant of the arrival of cars containing export freight at the East Boston yards adjoining the pier, and that the cars were held there until the defendant gave the plaintiff a written order to bring them on to the pier and there unload the contents.

The plaintiff had filed with the interstate commerce commission a storage tariff which was in force at the time of this controversy, providing that thirty days' free storage would be allowed on export freight at East Boston, and that after the expiration of thirty days a charge of twenty cents per net ton per month or part thereof should be charged. By reason of a strike of the defendant's longshoremen in January, 1912, there remained in the plaintiff's yard for more than thirty days the goods on which the charges in question accrued. Before the sailing of each ship the plaintiff sent to the defendant a statement showing all charges claimed on account of the goods loaded on that ship. The defendant has paid all the account, except these storage charges; and, although not contesting the amount, it denies its liability therefor. This action is brought to recover them.

While the storage charges were accruing, on January 26, 1912, L. H. Peters, the foreign freight agent of the plaintiff, and J. H. Thomas, the defendant's manager at Boston, had a conference on the subject of liability therefor. This was the situation confronting them: The plaintiff's agents, recognizing that the charges were accruing as a result of strike conditions, were reluctant to impose the burden of them on the defendant. But the plaintiff was legally bound to collect this storage from somebody, in accordance with the terms of its tariff, filed with the interstate commerce commission. Act to regulate commerce as amended June 29, 1906, and June 18, 1910. (34 U. S. Sts. at Large, c. 3591, § 2; 36 U. S. Sts. at Large, c. 309.) See *New York, New Haven, & Hartford Railroad* v. *York & Whitney Co.* 215 Mass. 36; *Louisville & Nashville Railroad* v. *Maxwell,* 237 U. S. 94. Without now considering the legal relation of the interstate commerce act to this defendant, a foreign steamship company en-

gaged in transatlantic commerce (see *Central Railroad of New Jersey* v. *Anchor Line, Ltd.* 219 Fed. Rep. 716; *Cosmopolitan Shipping Co.* v. *Hamburg-American Packet Co.* 13 I. C. C. Rep. 266) it is agreed that the defendant's agent deemed it important to forward this freight which he knew had been carried subject to the interstate commerce act, and on which also the plaintiff had a lien for charges. *Miller* v. *Mansfield,* 112 Mass. 260. At this time only two small shipments, on which the charges were but $48.73, had been delivered to the defendant.

It was in these circumstances that the agents made the agreement on which the plaintiff relies in the third count of the declaration, namely, that the payment of the charges should be held in abeyance; and "if it should be decided that the plaintiff was entitled to charge said storage on freight delivered to the defendant, the defendant would pay said charges, regardless of who might be liable for them." *

At first the parties agreed that the question of whether the plaintiff was entitled to make these charges should be settled by their attorneys, or by some suitable third person chosen by them. Later this provision was modified, and it was agreed, on the suggestion of the defendant's manager, to submit to the interstate commerce commission for a ruling the question, whether such charges were legally payable (either by the shipper or the defendant), notwithstanding they accrued as the result of a strike. And the defendant's manager, Thomas, wrote: "If the commission should decide that they are collectible I will then undertake to pay them so that it will not be necessary for you to take the subject up with shippers."

The plaintiff, by its traffic manager, H. M. Biscoe, submitted the matter to the commission, on May 4, 1912, in a letter approved by Thomas. In fact Biscoe urged the commission to authorize the plaintiff to waive the charges. The opinion sent by the commission was, that the charges could not lawfully be waived. And this was in accordance with Conference Ruling No. 8 (November 18, 1907) of the commission. See *Budgett & Co.* v. *Binnington & Co.* 25 Q. B. D. 320. The plaintiff there-

---

* The first count in the declaration was upon an account annexed for the storage charges and the second count was upon an agreement as to the storage charges based upon the storage tariff.

upon demanded payment, in accordance with the agreement, and Thomas promised to send a check.

The decision of the interstate commerce commission was sent to the plaintiff June 6, 1912, and a copy was transmitted to Thomas on June 10. As early as May 3, 1912, Thomas had notified his principal, the defendant, through the assistant to the vice-president, that he had agreed to place the matter before the commission for a ruling. The defendant made no objection, and did not undertake to repudiate the agreement made by its manager until October 8, 1912, when Thomas notified the plaintiff that his superiors would not abide by the decision.

We are of opinion that on the agreed facts the defendant is liable to the plaintiff for these storage charges, under the express agreement made by its manager. By its general power of attorney Thomas was appointed "for the said company and in its name and stead to manage and transact its business" in the United States; and was authorized, among other things, "for the said company and in its name to make sign and seal contracts in the ordinary course of the company's business. Also for the said company and in its name to bring or defend, compromise, or abandon, actions at law, in equity or admiralty." That it was incident to the "ordinary course of the company's business" of receiving freight for export, to advance charges due to the preceding carrier, seems apparent from the fact that the defendant paid to the plaintiff all the other charges on the goods in question. *Miller* v. *Mansfield*, 112 Mass. 260. *Briggs* v. *Boston & Lowell Railroad*, 6 Allen, 246, 250. And that such a course was contemplated appears from the terms of the through bills of lading, especially paragraphs 1 and 6 in the contract between the shipper and the steamship company and sections 1, 5 and 11 in the contract between the shipper and the railroad company.* Indeed

---

* Paragraphs 1 and 6 of the contract between the shipper and the steamship company were as follows:

"Paragraph 1.  The carrier shall not be liable for loss, damage or delay to any of the goods herein described caused by . . . riots, strikes or stoppage of labor . . ."

"Paragraph 6.  The carrier shall have a lien on the goods for all freights, primages and charges. . . ."

Sections 1, 5 and 11 of the contract between the shipper and the railroad company were as follows:

if the authority of Thomas to bind the defendant in making this agreement were less clear, it well could be found that the defendant ratified his action. See *Campbell* v. *Upton*, 113 Mass. 67; *Bryant* v. *Rich's Grill*, 216 Mass. 344, 350.

The case was heard in the Superior Court on an agreed statement of facts.* It follows from what we have said, that the fourth and fifth rulings requested by the plaintiff should have been given, — in effect that it was entitled to recover on the third count in its declaration. This conclusion makes unnecessary any discussion of its claim under the first and second counts, relating to the same storage charges. See *New York, New Haven, & Hartford Railroad* v. *Sampson, ante,* 311.

The exceptions must be sustained, and, under St. 1909, c. 236, judgment is to be entered for the plaintiff in the sum of $1,344.76, together with interest from July 1, 1912.

*So ordered.*

*G. H. Fernald, Jr.,* for the plaintiff.
*C. L. Favinger,* for the defendant.

---

Section 1. "No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof, or damage thereto . . . by riots, strikes or stoppage of labor. . . ."

Section 5. "Property not removed by the person or party entitled to receive it within twenty-four hours after its arrival at destination (port of Boston) may be kept in the car, depot or place of delivery of the carrier at the sole risk of the owner of said property and there held subject to lien for all freight and other charges."

Section 11. "This contract is executed and accomplished and all liability hereunder terminates on the delivery of the said property to the steamer, her master, agent or servants, or to the Steamship Company or on the steamer pier at the said port, and the inland freight charges shall be the first lien due and payable by the Steamship Company."

* By *Dubuque,* J., who found for the defendant. The plaintiff alleged exceptions.