BOSTON AND MAINE RAILROAD *vs.* OCEANIC STEAM NAVIGATION COMPANY, LIMITED.

Suffolk.    November 14, 1916. — May 23, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Contract,* Implied, Construction. *Railroad.*

In an action by a railroad corporation engaged in interstate commerce against an ocean carrying steamship corporation for storage charges on exported goods, which had accrued by reason of the inability of the defendant to accept the goods sooner than it did on account of a longshoremen's strike, it appeared that the plaintiff was obliged to collect the storage charges in accordance with the terms of the tariff that it had filed under the interstate commerce act, and that it notified the defendant of this obligation and that "if traffic is taken forward by you on which storage charges have accrued, in accordance with the tariffs, we shall hold you responsible for payment of such charges," that the defendant replied acknowledging the receipt of the notice and saying, "We will appreciate it if you will kindly at your earliest convenience send us a copy of the I. C. C. Tariff to which you refer," that the next day the plaintiff sent to the defendant copies of the tariff in question, and that thereafter the defendant received and accepted from the plaintiff the goods on which the storage charges had accrued. *Held,* that under these circumstances the defendant must be taken to have acquiesced in the plaintiff's demand that if it took the goods it must pay the storage charges, and that accordingly, on its taking the goods, as matter of law an implied contract to pay the charges came into existence and that the plaintiff was entitled to judgment.

In the case above described it appeared that the contract between the shipper of the goods and the plaintiff contained a clause providing that the plaintiff "in case of physical necessity shall have the right to forward said goods by any railway or route between the point of shipment and the point of destination," and the defendant contended that this clause made it the duty of the plaintiff to forward the goods by another steamship company when it found that the defendant could not take the goods on account of the longshoremen's strike, but it was *held,* that the clause quoted related only to the transportation by rail to the railroad terminus and had nothing to do with the forwarding of the goods by steamship after they had reached "the point of destination."

In the same case it appeared that the contract between the shipper and the plaintiff contained a provision that the plaintiff should "not be liable for loss, damage or delay to any of the goods herein described caused by . . . riots, strikes, or stoppage of labor" and that the contract between the shipper and the defendant contained a similar provision, but it was *held* that these provisions, which prevented the shipper from collecting from either the plaintiff or the defendant damages caused by strikes, contained nothing which absolved the plaintiff from its duty to collect the storage charges from the shipper that were required by the tariff it had filed under the interstate commerce act when those storage charges were created by reason of a strike.

CONTRACT to recover the sum of $514.88 for storage charges that accrued to the plaintiff on export freight arriving at Boston on various dates in 1911 and 1912 with interest from February 15, 1912, when payment thereof was demanded. Writ dated March 23, 1914.

The declaration was on an account annexed with items as follows:

| | |
|---|---|
| "To storage charges Hoosac Tunnel Docks Jan. 4 to Feb. 15, 1912, | $494.93 |
| To storage charges Boston Junction Jan. 4 to Feb. 15, 1912, | 19.95 |
| Total, | $514.88" |

The defendant's answer contained the following allegation: "And further answering the defendant says that if it ever agreed to pay the charges as alleged in the plaintiff's declaration it is excused from such agreement by reason of the general strike among its employees and longshoremen which prevented the defendant from receiving the contents of the cars sooner than it did and by reason of other causes beyond the defendant's control."

In the Superior Court the case was heard by *Dubuque,* J., without a jury. The case was presented principally upon agreed facts

with some oral evidence. It appeared that the plaintiff was an interstate carrier with an ocean terminal at Boston, where it delivered export freight to the defendant, a foreign steamship company, at one of the plaintiff's piers which the defendant occupied in common with other steamship companies; that on January 4, 1912, there was a strike of longshoremen employed by the defendant, and as the result of the inexperience of the men employed to take the place of the strikers the defendant's ships were unloaded and loaded slowly so that they were delayed in sailing from four to eight days each.

As a result of this delay a large quantity of export freight was piled up on the plaintiff's pier and was held in its cars, waiting an opportunity for unloading, and the storage charges accrued for which the action was brought. The plaintiff had filed with the interstate commerce commission storage tariffs which were in force at the time of this controversy, providing that thirty days' free storage should be allowed on export freight (except upon hay and corn in the ear) and that after the expiration of thirty days a charge of thirty cents per ton per month or any part thereof should be made, and that in the case of hay and corn in the ear fifteen days' free storage should be allowed, and after the expiration of fifteen days a charge of thirty-five cents per car or part thereof per day or fraction thereof should be made. The plaintiff notified the defendant of the arrival of each car containing freight consigned for export on the defendant's boats and the freight was unloaded on to the pier by the plaintiff as soon as there was room for it there, or as soon as it was ordered unloaded by the defendant. This notice of arrival contained a statement showing from what date the free period of thirty days would run in each instance. Two charges, one of $13.30, another $6.65, were for storage of cars loaded with hay, for which storage accrued at the rate of thirty-five cents per carload per day after the expiration of fifteen days from the time of arrival at Boston, and in the case of the remaining articles the charge was twenty cents per ton per month or fractional part thereof after the expiration of thirty days. In each instance the goods were stored for more than thirty days. In some cases the goods were for a part of the time in the cars and a part of the time on the plaintiff's pier but in a large majority of the cases the goods were not unloaded

from the cars for a period in excess of thirty days.   Each of the storage charges accrued in connection with an interstate shipment moving on a through bill of lading which was in two parts, one containing the contract between the shipper and the plaintiff and the other the contract between the shipper and the defendant. These shipments of freight came over the plaintiff's railroad as result of previous agreements between the shipper, who sometimes acted through the plaintiff, and the defendant, all bookings for its own portion of the carriage being made by the defendant itself. The bills of lading provided that neither the plaintiff nor the defendant should be liable to the shipper for loss, damage or delay caused by strikes.   Other facts are stated in the opinion.

At the close of the evidence the plaintiff asked the judge to find and to rule as follows:

"1. That upon all the evidence the plaintiff is entitled to recover.

"2. That the plaintiff is entitled to recover storage charges from the defendant whether the defendant collected from the consignees or not.

"3. That the plaintiff is entitled to recover from the defendant storage charges upon the basis of the tariff which had been filed with the interstate commerce commission duly published by the plaintiff."

The judge refused to find or rule as requested and made the following memorandum of decision:

"I am not satisfied by a fair preponderance of the evidence that there was a valid contract expressed or implied between the defendant and the plaintiff to pay for the storage charges sued on, and in the absence of such contract there is no legal liability to pay the same.

"There was evidence before me that the defendant paid storage charges to the plaintiff on some items of freight when it collected the same from the consignees of the goods carried, but neither from the course of dealing between the parties as connecting carriers nor from other facts and circumstances is it to be inferred that there was existing at the time the storage charges arose in this case a valid agreement by the defendant to pay the same.   It refused to become liable for the charges, and one may not be compelled to enter into a contract against his own consent.

"The defendant was bound to take the goods under its bills of

lading with the shippers. When it took the goods it carried out its separate contracts set forth in such bills of lading, and not by way of assent to the plaintiff's terms."

The judge found for the defendant; and the plaintiff alleged exceptions.

*G. C. Coit,* for the plaintiff.

*C. L. Favinger,* for the defendant.

LORING, J. The question presented in this case is the right of a railroad to recover storage charges of the same kind and caused by the same longshoremen's strike as those before the court in *New York Central & Hudson River Railroad* v. *Frederick Leyland & Co. Ltd.* 222 Mass. 444. In that case the right to recover depended upon the authority of an agent to enter into an agreement on the part of the steamship company to pay storage charges in case it was decided by the interstate commerce commission that those charges were covered by the tariff filed by the railroad under the interstate commerce act. It appeared in that case that the interstate commerce commission decided that that tariff was within the act and it was held that the agent had authority to make the contract. The right of the railroad to recover in the case at bar depends upon the question whether as matter of law the steamship company came under an implied contract to pay the storage charges here in question by accepting delivery of the goods under circumstances set forth in the agreed facts. We say that the question is whether as matter of law an implied contract came into existence because the finding of the judge who heard the case without a jury was for the defendant.

The circumstances were these: Before the matters herein complained of took place the railroad had filed a tariff under the interstate commerce act which provided for storage charges in case goods were not unloaded within the free time therein specified. On January 16, 1912, the steamship company wrote to the railroad company that it had been their intention to forward by the "Anglian intended to sail for London on the 19th . . . all traffic which requires to be loaded at seaboard within 30 days after arrival at Boston" but that owing to the longshoremen's strike they had found it impossible to do so and that "we are obliged to notify you therefore that we cannot accept any responsibility for such storages incurred." To this the railroad answered: "We are obliged

to collect storage charges in accordance with the I. C. C. Tariffs in force, and if traffic is taken forward by you on which storage charges have accrued, in accordance with the tariffs, we shall hold you responsible for payment of such charges." The steamship company replied upon the same day acknowledging the receipt of the railroad's answer and wrote: "We will appreciate it if you will kindly at your earliest convenience send us a copy of the I. C. C. Tariff to which you refer." On the next day (that is to say on January 18) the railroad company sent the steamship company copies of the tariff in question. Thereafter (that is to say after January 18) the steamship company took delivery of the one hundred and thirty-one lots of freight on which the storage charges had accrued that are the subject of this action. The goods in question were carried by the railroad and by the steamship company under one bill of lading. But that bill of lading contained two agreements made with the shipper, one by the railroad and the other by the steamship company, and these agreements were made by them separately and not jointly. There is no dispute as to the amount of the storage charges nor that they are in accordance with the tariff.

1. The storage charges in question were within the interstate commerce act and the shipper was liable to pay them. The railroad company had no option in the matter; they were bound to collect them. *New York Central & Hudson River Railroad v. Frederick Leyland & Co. Ltd. ubi supra. New York, New Haven, & Hartford Railroad v. York & Whitney Co.* 215 Mass. 36. The demurrage charges in question in *Central Railroad of New Jersey v. Anchor Line, Ltd.* 219 Fed. Rep. 716 (relied upon by the defendant), were not storage charges within the interstate commerce act, were not charges for which the shipper was liable, and for them the railroad did not have a lien. The decision in that case was based on these facts. The other decision upon which the defendant has placed its main reliance, namely, *The Corfe Castle,* 221 Fed. Rep. 98, was not a case of charges within the interstate commerce act but was a case in which a lighterage company undertook to collect demurrage charges from the steamship company for which under the contract between the shipper and the steamship company the steamship company was not liable.

2. The plaintiff railroad company had a lien on the goods for these storage charges. *Kawcabany v. Boston & Maine Railroad,*

199 Mass. 586. *New York Central & Hudson River Railroad* v. *Frederick Leyland & Co. Ltd.* 222 Mass. 444. See also *Miller* v. *Mansfield*, 112 Mass. 260.

3. The case therefore comes down to this: In case a railroad company has transported to the seaboard goods to be delivered by it to a steamship company to be carried to a foreign port and those goods as against the shipper are subject to storage charges for which the railroad company has a lien, does an implied contract arise as matter of law under the circumstances of this case?

We are of opinion that as matter of law an implied contract does come into existence in such a case.

The defendant's position is that the fact that the railroad company wrote the last letter is not decisive; that it is a case where both parties were acting on parallel lines which never met. Whatever may be the result in a case which depends solely upon the fact that the party seeking to charge the other had the last word, there is more than that in the case at bar. When the railroad company wrote that it had no option under the act and under the tariff filed by it under the act, the steamship company replied that they would like to see the tariff. It took no objection to the statement that the railroad company had no option under the act. If the charges were covered by the tariff filed by it, they impliedly accepted that statement by confining their answer to a request for a copy of the tariff. When the steamship company was furnished with a copy of the tariff, which in fact covered the charges demanded by the railroad, no further objection was made by it and delivery of the goods was accepted. We are of opinion that under these circumstances as matter of law the steamship company must be taken to have acquiesced in the plaintiff's demand that if it took the goods it must assume responsibility for the charges.

Objection has been made by the steamship company that under the agreed facts an order for delivery (in the form there set forth) was not used in case of all the one hundred and thirty-one lots and also that some of the goods were not transported from the cars of the plaintiff on to the defendant's ship but were unloaded upon the pier and that "as soon as the goods were deposited on the pier by the plaintiff, they were considered by the parties as in the custody and control of the defendant;" in that connection the steamship company urges that the plaintiff lost its lien when it

deposited the goods on the pier. These are all matters of detail. Of course the plaintiff lost its lien when it made delivery to the defendant. It is immaterial whether it lost its lien when the goods were unloaded on to the ship or on to the pier. The material fact is that the defendant took delivery after notification that it must assume responsibility for the charges if it took delivery and it finally took delivery without objection on its part.

The judge who tried the case based his finding upon this: "When it [the steamship company] took the goods it carried out its separate contract set forth in such bills of lading, and not by way of assent to the plaintiff's terms." But neither the shipper nor the steamship company had a right to the possession of the goods to enable the steamship company to carry out that company's contract with the shipper until these storage charges had been paid.

The defendant's next contention is that the plaintiff railroad company had no right to deliver the goods to the steamship company under the circumstances. This contention is based upon a clause in the agreement between the shipper and the railroad company providing that the railroad company "in case of physical necessity shall have the right to forward said goods by any railway or route between the point of shipment and the point of destination." Its contention is that by force of this clause it was the duty of the railroad company to forward the goods by another steamship company when it found that the defendant steamship company (by which the goods were billed) could not take delivery on account of the longshoremen's strike. The contention is wholly without foundation. This provision in the agreement between the shipper and the railroad company has to do with the transportation by the railroad to the railroad terminus; it has nothing to do with the forwarding of the goods after they had reached "the point of destination" to be reached by the railroad.

The last contention of the defendant is that "the longshoremen's strike is a complete defence to all claims which accrued during the period in question." There is a clause in the agreement between the shipper and the railroad company which provides that the railroad company shall "not be liable for loss, damage or delay to any of the goods herein described caused by . . . riots, strikes, or stoppage of labor" and there is a similar agreement in the contract

between the shipper and the steamship company. These agreements prevented the shipper from collecting from the railroad company and the steamship company damages caused by strikes. There is nothing either in the agreement between the shipper and the railroad company or· in that between the shipper and the steamship company by which the railroad company was absolved from collecting storage charges which it was bound to collect from the shipper by force of the interstate commerce act under the tariff which it had filed when those storage charges were brought into being by reason of a strike.

We have found nothing in the other cases cited by the defendant which requires particular notice.

It follows that the exceptions must be sustained. And we are of opinion that under St. 1913, c. 716, § 2, judgment should be entered in favor of the plaintiff in accordance with the agreed facts. The amount of the judgment will be $538.08 with interest from July 1, 1912. And it is

*So ordered.*