**COTTON CONCENTRATION COMPANY, Inc., Appellant,**

v.

**A. LASSBERG & COMPANY, Inc., Appellee.**

**No. 7970.**

Court of Civil Appeals of Texas, Texarkana.

April 6, 1970.

On Motion for Rehearing May 5, 1970.

Rehearing Denied May 19, 1970.

See also Tex.Civ.App., 433 S.W.2d 736.

Brooks, Montgomery & Matthews, Dallas, Mills, Shirley, McMicken & Eckel, Galveston, Burford, Ryburn & Ford, Dallas, for appellant.

Sheehy, Jones, Cureton, Westbrook & Lovelace, Waco, for appellee.

DAVIS, Justice.

Plaintiff-appellee, A. Lassberg & Company, Inc., sued defendant-appellant, Cotton Concentration Company, Inc., a warehouseman, for a declaratory judgment in which appellee sought to have the trial court declare that it was not liable to appellant, who was operating in interstate commerce, for unpaid storage charges and interest on certain bales of cotton being claimed by appellant during the time appellant's employees were on strike from March 11, 1967, to and including April 22, 1967, and the additional time following the strike when appellant could not make delivery of the bales of cotton as the result of the strike.

Appellee is a cotton merchant, engaged in the activity of buying and selling cotton on the market which also incurrs interstate commerce. Appellant owns a public warehouse located in Galveston, Texas, and is in the business of storing bales of cotton that are ultimately shipped to various markets of the world. Appellee had been a customer of the appellant for a number of years. In 1967, appellee had stored with the appellant many bales of cotton. Appellant and its employees got

involved in a labor dispute ·and a strike began on March 11, 1967, and extended through April 22, 1967. Appellee had stored the bales of cotton with appellant prior to the commencement of the strike. During the course of the strike and in the regular course of appellee's business operations, it ordered various bales of cotton out of storage attempting to use the established and customary practice as was usually carried on between appellant and appellee.

Appellant reported that it could not deliver the bales of cotton because of the strike. It did not deliver them until sometime after April 22, 1967. Appellant continued to make storage charges for the bales of cotton and appellee took the position that they were being charged for an involuntary storage period which was caused by the strike of the employees.

The case was tried before the trial court on an agreed stipulation of facts. It reads, in part, as follows:

### "STIPULATION OF FACT

Pursuant to mutual agreement, the Plaintiff A. Lassberg & Company and the Defendant, Cotton Concentration Company, Inc. stipulate the following relevant facts concerning the matters in dispute in the above entitled and numbered suits:

1. A. Lassberg & Company is a private corporation duly incorporated under the laws of the State of Texas engaged in business as a cotton merchant buying and selling bales of cotton at all times relevant to this suit.

2. Defendant Cotton Concentration Company, Inc. is a private corporation duly incorporated under the laws of the State of Texas with its principal place of business and warehouse and facilities situated in Galveston, Galveston County, Texas. Defendant is engaged as a public warehouseman serving the Port of Galveston area storing and handling bales of cotton at all times relevant to this suit.

3. Defendant Cotton Concentration Company was involved in a labor dispute with its employees which resulted in a strike by the employees which began on March 11, 1967 and extended through April 22, 1967.

4. Prior to the commencement of the strike, Plaintiff A. Lassberg & Company stored certain bales of cotton in the Defendant's warehouse in Galveston for for which the Defendant made its regular daily storage charges *together with other charges for other services as established by its published tariff which became effective August 1, 1966, a copy of which is attached hereto and incorporated herein by reference.* Defendant, at the time the storage began, issued its regular warehouse receipt for each and every bale of cotton stored, each receipt and bale being given a separate identifying number.

5. During the course of the strike the Plaintiff in the regular course of its business ordered out of Defendant's warehouse various bales of cotton at various times and either tendered the warehouse receipts and charges or followed the customary established course of business between the parties of sending the receipts in due course and being regularly billed for the charges by Defendant Cotton Concentration Company, Inc.

6. Defendant Cotton Concentration Company, Inc. notified the Plaintiff that it was unable as a public warehouseman to make delivery of the bales so ordered out of storage because of the existing strike of its employees.

7. Defendant Cotton Concentration Company, Inc. continued to make its regular warehouse storage charges for these bales of cotton that had been ordered out of storage during the strike

and which could not be immediately delivered because of the strike.

8. Since bales of cotton could not be delivered out of the warehouse during the strike, there was a large accumulation of orders from various customers during the period of the strike; and, therefore, by reason of the strike and the resulting accumulation of orders for bales to be delivered out of the warehouse, there was a lapse of a number of days following the end of the strike before delivery could be made of many bales of cotton including bales of cotton owned by Plaintiff and ordered out of storage by Plaintiff during the strike. Defendant Cotton Concentration Company, Inc. continued to make storage charges on these bales of cotton until the bales were in fact delivered out of the warehouse.

9. Plaintiff A. Lassberg & Company has paid the Defendant Cotton Concentration Company, Inc. for all of the storage charges assessed by Defendant for by Defendant save and except those storage charges assessed by Deffendant for the period of time following the date when Plaintiff ordered the bales of cotton out of storage and the actual dates when such bales of cotton were in fact delivered after April 22, 1967, the date on which the strike ended. The storage charges falling in this category claimed to be due by Cotton Concentration Company, Inc. and disputed by Plaintiff A. Lassberg & Company total $1,255.27.

10. Plaintiff would have had two weeks free storage of the bales of cotton on the docks at Galveston if the bales had been delivered promptly after they were ordered out.

11. When the bales involved were ordered out of storage they were scheduled to be loaded on certain designated ships at the Port of Galveston and said ships either called at the Port of Galveston or would have called at the Port of Galveston, but for the strike, within a two week period from the date the bales were ordered out for delivery to the docks.

12. Plaintiff A. Lassberg & Company as a cotton merchant buying and selling cotton, has for many years utilized the warehouse facilities of Defendant Cotton Concentration Company, Inc. in relation to their cotton moving to or through the Port of Galveston for export shipment to world markets.

13. Attached hereto is a true copy of the form of warehouse receipt which was issued by Cotton Concentration Company, Inc. for each bale of cotton involved in this suit. Such receipt is incorporated herein in this Stipulation by reference."

"Each of the parties to the foregoing styled and numbered cause agree to each of the foregoing stipulations of. fact and agree that said stipulations may be offered in evidence as establishing the facts therein set out." Emphasis added.

The attorneys for the appellant and appellee, both, signed the stipulation of facts. It will be noted that in paragraph 4 of the stipulation of facts there is referred to a published "Tariff of Cotton Concentration Company, Galveston, Texas effective August 1st, 1966." And, on the face of the tariff we find the following quotations:

"Organized 1910 to provide efficient and economical cotton hauling and storage services.

The highly developed skills and experience of our labor force and staff, plus modern equipment and facilities, provide the finest and most dependable cotton inventory and distribution services for the export and domestic trade.

———

This tariff cancels all previous tariffs and is subject to change without notice."

The tariff provides the amount charged by appellant for the various services ren-

dered. It also contains "CONDITIONS" which read, in part, as follows:

"This Company is not liable for any delays or other consequences, which may result from work stoppages caused by labor disputes, riots fires, floods, or from other causes beyond our control."

The trial court rendered a judgment in which it declared that the appellee was not indebted to appellant for any of the warehouse storage charges and interest thereon during the strike and the time appellant could not make delivery of the bales of cotton because of the strike, and that appellant take nothing. Appellant has perfected its appeal and brings forward one point of error.

By its point, appellant says the trial court erred in rendering judgment that appellant take nothing for the various charges made by appellant to have accrued during and because of the strike of its employees and thereafter while delivery could not be made. The appellee countered the point by saying the charges were for a period of involuntary storage when appellant could not make delivery because of a labor dispute and a strike by its own employees after appellee had ordered their cotton out of the warehouse and tendered the warehouse receipt and charges due at the time, as had been the custom and practice between the parties.

■ This seems to be a case of first impression in Texas. The appellee actually knew about the employees and the labor unions and it agreed that appellant would not be liable for any delays or work stoppage caused by labor disputes whereby the appellant did not do anything that caused the strike or was not at fault in any way. This seems to have occurred in the case at bar. There is no indication whatever that appellant was guilty of any act that caused the strike. In some cases, the Federal Courts have exclusive jurisdiction over such strikes, but that fact has not been raised in this case. 48 Am.Jur.2d 830, Sec. 1338. When the bales of cotton were stored with appellant there was no indication of any trouble with appellant and its employees. After the bales of cotton were stored, appellee called for their delivery during the time of the strike. Appellant advised the appellee that the labor force was on strike and the bales of cotton could not be delivered. We will assume that they tendered the payment that had accrued up to that time but we cannot take the position that they are not liable for the additional time that it took to get the bales of cotton delivered after the strike had been settled. A state, in cases of interstate commerce, cannot forbid a peaceful strike against an employer which is covered by the Labor Management Act. 48 Am.Jur.2d 846, Sec. 1360; 51A C.J.S. Labor Relations § 274, p. 42. It is pointed out in these sections that many people have been forced out of business, to take bankruptcy, and to do damages to thousands of innocent persons not involved in the strike. Tate v. Philadelphia Transportation Company, 410 Pa. 490, 190 A.2d 316.

■■ Appellant writes a rather lengthy brief on the one point of error and cites some authorities and cases which are indirectly in point. 17 C.J.S. Contracts § 100(2) p. 797; Portland Gasoline Co. v. Superior Marketing Co., (1951) 150 Tex. 533, 243 S.W.2d 823; Boston & M. R. R. Co. v. Oceanic Steam Nav. Co. (1917) 226 Mass. 509, 116 N.E. 260; United States of America v. Wagner (10th Cir. 1968), 390 F.2d 13; Bull-Insular Line, Inc. v. National Sugar Refining Co. (Dist.Ct.Pa.1960) 180 F.Supp. 216. Whether the warehousing and storage of goods comes within the Fair Labor Standards Act depends upon the circumstances of the particular case, such as in interstate commerce, and whether the goods are regarded as having come to a halt in their movement. 51B C.J.S. Labor Relations § 1068, p. 508. In this case the goods were in interstate commerce and the third party does not have any claim for damages. See cases cited under Note 84, 51B C.J.S. Labor Relations § 1068, p. 508, supra.

■ Appellant places much stress on the issues of the strike. It cites many authorities where nonperformance of the contract may be excused. 13 Tex.Jur.2d 590, Sec. 327. Appellee, having agreed to the contract and the tariff for the storage of the bales of cotton and having signed the stipulation of facts, is bound thereby. Appellee was put on notice through the contract and the tariff that there might be employee trouble and a strike may be called without any part thereof being caused on the part of the appellant. Cuyamel Fruit Co. v. Johnson Iron Works (5th Cir. 1920), 262 F. 387, cert. den., 253 U.S. 485, 40 S.Ct. 481, 64 L.Ed. 1025. In this case, damages were caused by strike and the appellant was not shown to be liable therefor. Southern Pacific Company v. H. Rothstein & Sons (Tex.Civ.App.1957) 304 S.W.2d 383, n. w. h.

Since the case was tried on the stipulation of facts it becomes the duty of this court to enter the judgment that the trial court should have entered in the first place. The judgment of the trial court is reversed and judgment is entered for the appellant for $1,255.27, with interest thereon at the rate of six percent per anum from and after July 8, 1969.

Reversed and rendered.

## ON MOTION FOR REHEARING

The above three cases were filed and tried separately in the trial court. They were not consolidated. Rule 174, Vernon's Texas Rules of Civil Procedure, 3 T.J.2nd, 347, Sec. 83. The cases were each tried on a stipulation of facts containing the exact phraseology, except the amounts claimed by appellant against each of the different appellees. In the first case, they stipulated the amount claimed to be due appellant by appellee A. Lassberg & Co. Inc. was $1,255.27. In the second case, they stipulated the amount claimed to be due appellant by appellee H. Molsen & Co., Inc., to be $6,130.78. In the third case, they stipulated the amount claimed to be due appel-

lant by appellee Toyo Cotton Co. to be $4,185.20. The trial court rendered separate judgments in each case in favor of each of the three appellees.

Appellant perfected a separate appeal in each case. On April 7, 1970, this Court handed down its three decisions and three judgments in each of the three cases.

■ On April 14, 1970, appellees filed a joint-motion for rehearing as if all three cases have been consolidated. On April 22, 1970, appellees filed a joint-supplemental brief as if all three cases have been consolidated. On April 23, 1970, appellees filed a joint-addition to supplemental brief as if all three cases have been consolidated.

Appellant has not filed a motion to strike the joint motion of appellees. Appellees should have filed separate motions for rehearing in each of the three cases. In 4 T.J. 2nd 225, Sec. 728, it says, in part, that: "Appeals in separate and distinct suits, with different parties and different subject matter, and in which separate judgments are rendered, cannot be heard together on appeal, even though the parties have agreed that they be tried together below."

The judgments in each of the three cases are against different parties and for a different amount of money. Therefore, there can not be any consolidation.

The time fixed for filing a motion for rehearing in the Court of Civil Appeals is 15 days after the date of the original opinion and judgment. The Court of Civil Appeals does not have any authority to extend the time for filing the same. Rule 458, V.T.R.C.P.; 4 T.J.2nd 228, Sec. 732. Rule 5 prohibits the enlargement of the time to file motions for rehearing. Winter v. Hamilton, Tex.Civ.App.1948, 214 S.W.2d 330, n. w. h.

The joint motion for rehearing is dismissed for the lack of jurisdiction.

If we are mistaken in dismissing the joint motions for rehearing, then we have

carefully considered each point of error raised by appellees in its joint motion for rehearing, find each of them to be without any merit, and they are overruled.

On Motion for Rehearing May 5, 1970.

Rehearing Denied May 19, 1970.

Brooks, Montgomery & Matthews, Dallas, Mills, Shirley, McMicken & Eckel, Galveston, Burford, Ryburn & Ford, Dallas, for appellant.

Sheehy, Jones, Cureton, Westbrook & Lovelace, Waco, for appellee.