**TOYO COTTON COMPANY, Petitioner,**

v.

**COTTON CONCENTRATION COMPANY, Inc., Respondent.**

**A. LASSBERG & COMPANY, Petitioner,**

v.

**COTTON CONCENTRATION COMPANY, Inc., Respondent.**

**H. MOLSEN & COMPANY, Petitioner,**

v.

**COTTON CONCENTRATION COMPANY, Inc., Respondent.**

**Nos. B-2195, B-2196 and B-2197.**

Supreme Court of Texas.

Dec. 9, 1970.

Rehearings Denied Jan. 6, 1971.

Sheehy, Jones, Cureton, Westbrook & Lovelace, W. E. Cureton, Waco, for petitioner.

Mills, Shirley, McMicken & Eckel, Galveston, Burford, Ryburn & Ford, Brooks, Montgomery & Matthews, Frank C. Brooks, Dallas, for respondent.

GREENHILL, Justice.

The common question in these three suits for declaratory judgment is whether the plaintiffs Toyo Cotton Company et al. are liable to the defendant Cotton Concentration Company, Inc., for storage charges on plaintiffs' cotton during the period in question. The cotton was stored under an agreement, called a tariff, on a per day charge. At the time when the plaintiffs requested their cotton removed from storage to be shipped overseas, they tendered the amount due for storage up to such time; but the defendant storage company could not deliver the cotton because of a strike resulting from a labor dispute between the storage company and its employees.

As will be discussed below, the storage agreement provided among other things that the storage company would not be liable for any delays or other consequences

which might result from work stoppage caused by labor disputes. The question here is *not* whether the storage company is liable to the plaintiffs for their loss of profits from the defendant's failure to deliver the cotton when requested, but whether storage charges continued to accrue on the cotton after the plaintiffs had requested its withdrawal from storage, but had been unable to obtain it.

The trial court, sitting without a jury, ordered the three cases to be tried jointly, and trial was had under a common stipulation of facts. The same printed contract was involved in each case, and only the amount of rental charges was different. The amounts are not in dispute.

The judgment in each case was a declaration that the plaintiff was not required to pay the storage during the period in question. The Court of Civil Appeals at Texarkana, in three separate opinions which are identical as to the merits of the cases, reversed and rendered judgment for the storage company for the rental charges. 454 S.W.2d 249, 255 and 256. We reverse the judgments of the Court of Civil Appeals and affirm those of the trial court.

## ADEQUACY OF THE MOTION FOR REHEARING

■ After the decisions of the Court of Civil Appeals, the three plaintiffs (appellees) filed motions for rehearing under a single cover. The instrument sets out separately the number and style of each case and stated that each of the appellees prayed for a motion for rehearing on the same grounds set out in the motion. The motion concludes, "Appellees each respectfully pray that the motion be granted and that the judgments of the trial court be affirmed." Separate copies were filed with the clerk for each appellee.

The Court of Civil Appeals, in three identical opinions on motions for rehear-

ing, held that the joint motion for rehearing filed by three appellees amounted to no motion for any of the three; and it dismissed such motion or motions for want of jurisdiction. Alternatively, it overruled the motion or motions.

We advert again to the fact that the three suits are for the construction of the same printed contract or charter; the facts are agreed upon by a common stipulation; and the same single law question is involved. We hold that the joint motions for rehearing were sufficient to give the Court of Civil Appeals jurisdiction thereof, and to give this court jurisdiction of the applications for writ of error.

Rule 458 [1] makes simple requirements for the motion for rehearing, and in no way precludes the filing of motions in the form which was used here. Furthermore, Rule 1 expressly provides for a liberal construction of all rules in order "to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law." We hold that the motion for rehearing meets the requirements of Rule 458. Bay v. Mecom, 393 S.W.2d 819 (Tex.Sup.1965); Metropolitan Trust Co. v. Farmers' & Merchants' National Bank, 89 Tex. 329, 34 S. W. 736 (1896).

## OPINION ON THE MERITS

■ In addition to the stipulated facts set out at the first of this opinion regarding the storage charges and the inability of the storage company to deliver the bales of cotton because of the strike with its employees, it is agreed that the plaintiffs had utilized the defendant's facilities for many years in their export of cotton to world markets. Ordinarily delivery was made from storage immediately upon tender of the warehouse receipts and payment of charges, and the stipulation is that defendant could not deliver immediately because of the strike.

1. All references to rules are to Texas Rules of Civil Procedure.

The bales ordered out of storage by the plaintiffs were scheduled to be loaded on designated ships at the Port of Galveston; and such ships either called at the Port, or would have called at the Port but for the strike. It is further stipulated that the ships called, or would have called, at the port within a two week period from the date the bales were ordered out of delivery to the docks. The latter stipulation is important because it is also agreed that the plaintiffs would have been entitled to two weeks free storage of the bales on the docks of Galveston if they had been delivered promptly after they were ordered out.

The defendant storage company continued to make its regular warehouse charges for the storage of the cotton that had been ordered out of storage until the cotton was actually delivered after the termination of the strike. The plaintiffs made the proper presentation of the warehouse receipts and have paid defendant for all storage charges and services except those storage charges assessed by the defendant from the date when plaintiffs ordered the cotton out of storage until the date of actual delivery.

The printed tariff provides for various charges for regular services including a stated amount per day for storage charges; and, as mentioned, it contains a provision that "This company is not liable for any delays or other consequences, which may result from work stoppages caused by labor disputes, riots, fires, floods, or from other causes beyond our control."

It is the position of the storage company that the cotton was in storage until actually delivered after the strike, that the contract or tariff provides for a charge for each day of storage without any exceptions, and that it was not only absolved of any liability to the plaintiffs which might otherwise accrue because of the delay in delivery caused by the strike (such as the loss of sales or a change in market price), but that the above clause entitles it to continue the per day charge for storage during the strike of its own employees, even though the plaintiffs not only no longer wanted their cotton stored, but wanted it out for shipment abroad. We do not agree with the defendant storage company.

It is our opinion that the condition in the contract to the effect that defendant will not be liable for delays caused by strikes does not speak to the problem at hand. The plaintiffs do not seek to hold the defendant liable for conversion, for loss of profits or for loss of sales. The clause is a shield for the defendant from claims against it, not a sword to affix liability on others for continued unwanted storage.

Nor do the plaintiffs here seek to impose liability for breach of contract to deliver timely in a situation in which the defendant might seek to interpose the defense of impossibility of performance; i. e., it could not perform because of the strike. Writing in this area, Corbin states

"One who contracts to render a performance or produce a result for which it is necessary to obtain the co-operation of third persons is not excused by the fact that they will not co-operate. This is a risk that is commonly understood to be on the promisor, in the absence of a provision to the contrary. If workmen strike he must procure others, or induce the strikers to return by satisfying their demands." 6 Corbin on Contracts (1962) § 1340 at page 404

"The one promising the performance that has later become impossible [by supervening events] bears the risk of loss . . . ; and he also bears the risk of not getting the agreed exchange (the price) for the performance that he promises to render. The other party also bears a risk—the risk of not getting the profit that performance of the bargain would have brought him; . . . But . . . he does not bear the risk of having to pay the promised price for nothing. If he does not get the house, or the goods, or the service, he does not have to pay the price; . . ." Id. at

§ 1321, page 324. [words in brackets added]

To the same effect is 6 Williston on Contracts (Rev. Ed.) 5413, § 1932.

Our reasoning is that when the defendant warehouse cannot perform as contemplated because of a strike of its own employees, its own inability to perform is not converted into an affirmative right to hold the plaintiffs' cotton indefinitely and with impunity to the extent of requiring the plaintiffs to pay for services which, to say the least, they did not desire.

The judgments of the Court of Civil Appeals are reversed, and the judgments of the trial court are affirmed.