Matthew M. Levy, J.
Gentlemen, I am going to render my opinion now, which will be the decision of the court in compliance with the provisions of CPLR 4213 (subd. [b]) and I shall dictate it orally on the record now.
Section 1109 of the Business Corporation Law provides that in a proceeding for the judicial dissolution of a corporation, the decision of the court shall be made ‘ with all convenient speed,” and it is for that reason that I shall not reserve decision and undertake the preparation of a written opinion.
In the Matter of Voluntary Dissolution of Pivot Punch & Die Corp. (15 Misc 2d 713) (not cited by counsel), the Supreme Court of Erie County, having a corporation before it such as this, consisting of two stockholders, determined that there be dissolution, and made the following comment (pp. 715-716): ‘ ‘ It must be conceded by all concerned that in effect, the Pivot *889 Punch and Die Corporation is a close corporation and, being a close corporation", it is simply a partnership consisting of Mr. Kopczynski and Mr. King, clothed with the benefits peculiar to a corporation, limited liability, perpetuity and the like * * #_ The United States Government, in its Technical Amendment Act of 1958 has acknowledged the kinship of a close corporation vis-a-vis a partnership by permitting, in a situation such as before this court, the stockholders to file and pay income taxes as though they were in fact partners. Obviously, the United States has concluded that a close corporation is in effect a partnership.
“It is well established that a partnership may be dissolved at any point or by any partner or by the court where a partner’s conduct is harmful. [Citing sections of the Partnership Law.]
‘ ‘ In addition to the technical rules surrounding a partnership and perhaps from a purely moral point of view, more important, there exists between partners the highest degree of fidelity, loyalty, trust, faith and confidence. When these characteristics in a partnership cease, then the true partnership ceases, and when these characteristics cease between owners of equal, or verily, substantially equal, shares in a close corporation, the close corporation ceases to be beneficial to the deadlocked stockholders.”
It will be of interest to note that the Justice of the Supreme Court in Erie County who rendered this decision is the Hon. Matthew J. Jaseh, who, beginning the first of January next, will be an Associate Judge of the Court of Appeals. When his decision went to the Appellate Division in the Fourth Department, he having ordered a hearing before a referee, his order was modified to the extent of directing that the hearing for dissolution be before the court and not a referee. Otherwise there was no disagreement with the comments made by him in his opinion. (9 A D 2d 861.)
On the contrary, in an interesting article on this very question by Professor Prunty of the New York University School of Law (34 N. Y. Univ. L. Rev., pp. 1425, 1433-1434) the writer states the following: “ In the leading case under these sections, ’ ’ referring to the sections of the now defunct General Corporation Law in this respect, “the Court of Appeals denied dissolution when the deadlock was admitted but the corporation still prospered,” citing Matter of Radom & Neidorff (307 N. Y. 1). “In recent years trial court decisions have shown a trend toward a more liberal application. This approach is epitomized this year in an opinion by Justice Jasen who correctly isolated the deadlock problem as one flowing from *890 the incorporated partnership. In entertaining the petition in question, Justice Jasen stressed the ‘ "partnership ’ nature of the close corporation and reasoned by analogy from the Partnership Law. Of especial interest is his conclusion that the lack of faith and trust which produced the deadlock may be the basis for a finding that dissolution is beneficial to the stockholders. This approach is realistic; it should- be commended for assigning to these statutes their proper function, i.e., freeing incorporated partnerships of the unnecessary corporate constructions.”
Professor De Capriles, formerly Dean of New York University School of Law (35 N. Y. Univ. L. Rev., p. 641) said as follows : “ The most constructive interpretation ever made lof New York’s deadlock statute has come this year from a trial court judge in Erie County, who reasoned, from partnership analogies in finding that dissolution of a close corporation after five years of mutual mistrust might be beneficial to the shareholders even though the corporation was still profitable.”
If we follow by analogy the permissible procedures having to do with dissolution of a partnership, we can refer to section 63 of the Partnership Law, which provides: ‘ ‘ The court shall decree a dissolution. 1. On the application by or for a partner whenever * * * (c) A partner has been guilty of such conduct as tends to effect prejudicially the carrying on of the business, (d) A partner wilfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable 'to carry on the business and partnership with him, (e) The business of the partnership can only be carried on at a loss, (f) Other circumstances render a dissolution equitable ”.
And, parenthetically, let me say here that it does not appear that the present corporate business has been conducted “ at a loss ” as a result of the vigorous, if not vitriolic, disagreement between the two stockholders and of their continued dissension, if by “loss” is meant merely actual financial deficiencies in the mathematical corporate statements. But it may well be that inability to increase the corporate business might come within the ambit of subdivision (e), although I do not so construe that provision, since that is not necessary to my decision.
Now, I am quite convinced that, if we are to follow Mr. Justice Jasen’s and the learned academicians’ viewpoint that a close corporation, such as the one now before me, is quite like a partnership, the present partnership corporation should be *891 dissolved, because the partners have shown that they have no confidence in, and indeed that they mistrust, each other, whatever their protestations may be.
But, even if we were to proceed within the ambit of the Business Corporation Law itself, I see no solution to this controversy than to direct a dissolution by judicial decree in accordance with article 11 of that statute. Section 1104 provides for a ‘ ‘ Petition in ease of deadlock among directors or shareholders”, and provides in subdivision (a) that “ the holders of one-half of all outstanding shares of a corporation entitled to vote in an election of directors may present a petition for dissolution on one or more of ” a number of specified grounds. That means that, if one valid ground remains in the case, even though the others may not exist or may be weaker than the one ground referred to, dissolution is in order.
Paragraph (1) of subdivision (a) of section 1104 provides for dissolution when “ the directors are so divided respecting the management of the corporation’s affairs that the votes required for action by the board cannot be obtained.” The individual respondent (Shubin) argues that not more than one board meeting was actually held, and therefore it cannot be said that the board will not act.
This is an equity proceeding and equity does not require the doing of a vain act. I invoke this precept as properly applicable in the present context. I am not persuaded that it was the responsibility of the petitioner (Surchin) to call a meeting and to call a meeting and to call a meeting in order to resolve the matters of dissension arising repeatedly from time to time between the directors. It is quite clear, from the whole history of the matter presented to me, that the petitioner and the respondent were in a battle and that, in critical matters, as well as in minor matters, they were not going to agree and that Shubin was going to disagree at every possible opportunity. To require the calling of meetings for the purpose of having formal proof of division would be elevating form above substance. Nor do I think it the advisable way to operate a business smoothly for the disagreeing directors, officers and stockholders to be relegated to court proceedings to resolve their differences when they arise, as suggested by the respondent.
It is also provided in paragraph (2) of subdivision (a) of section 1104 that if “ the shareholders are so divided that the votes required for the election of directors cannot be obtained ”, dissolution should result. I would be blinding myself to the established, and indeed undisputed, facts in this case — that the petitioner Surchin and the respondent Shubin have not *892 agreed and have not been able to agree and would not agree under existing conditions with respect to the election of a director or directors — were I to find otherwise. Paragraph (3) of subdivision (a) of the same section provides for dissolution of the corporation when “there is internal dissension and two or more factions of the shareholders are so divided that dissolution would be beneficial to the shareholders.”
I find as a fact that there is serious internal dissension between the two shareholders, that there are two factions of shareholders, and that dissolution would be beneficial to them, individually and together. And here I consider the statutory word “beneficial” to be applicable both in respect of the mental and physical well-being of a shareholder as well as financial gain to him. I will say that I cannot believe that I would not be authorized by this statute to direct a dissoluion of a close corporation when one of the two active shareholders, who is an active director and active officer of the corporation, issues threats of personal violence, listens in surreptitiously on his associate’s telephonic talks, seizes and cuts telephone wires, acts in the presence of employees so as to demean his associate as an employer in the corporation, takes trips at corporate expense without advance mutual consent, leaves the shop inadequately manned, and engages in other activities as if he were the sole owner of the business. And I would say that dissolution would be in order even if money were being made quite fully and readily by the corporation under such conditions — which is not the case here.
There is no doubt about the fact that, under existing law, the benefit to the shareholders of a dissolution is of paramount importance (Business Corporation Law, § 1104 subd. [a], par. [3]), but it is also equally clear that, under the present statute — September 1, 1963, I think is the effective date — it is provided that “ In a special proceeding brought under section 1104 (Petition in case of deadlock among directors or shareholders) dissolution is not to be denied merely because it is found that the corporate business has been or could be conducted at a profit.” I was quoting from paragraph (3) of subdivision (b) of section 1111 of the Business Corporation Law.
I recognize that the petitioner must act in good faith in order to entitle him to the relief of corporate dissolution. I believe, on the proof before me, that he has been and is acting-in good faith. I do not credit the countercharge made by the respondent that the purpose of the petitioner’s proceedings was to squeeze the respondent out of the business. On that *893 score, I find that there was genuine opportunity given prior to the trial (and, in view of the remark made hy counsel for the respondent in his summation just now, I add, during the trial as well) for the parties to get together on a conciliatory basis, first, to remain together, and second, if that be not acceptable, to dispose of the business on an amicable basis to one or the other of the shareholders or to a third person, without benefit or advantage to either Surchin or Shubin in excess of the opportunity, benefit or advantage which the other might be entitled to receive in this situation.
Now, I want to make it clear that I do not decide the issue of the validity of the shareholders’ agreement of April 8, 1965, nor do I undertake to interpret it as to the number of directors provided for — two or four — for this corporation. It is my opinion that, in this proceeding, the matter of the validity of that agreement and of its interpretation is before me, if at all, in tangential fashion. The legality and its meaning were definitely before the court in the case instituted by Shubin against the two Surchins and the subject corporation, in line with the majority opinion of the Appellate Division rendered in May of 1967, and I need not resolve that issue in order to render an appropriate decision here. (See Shubin v. Surchin, 27 A D 2d 452.) It is my viewpoint that there is deadlock here without question between the shareholders. There is deadlock here without question between the directors or among the directors, whether the directors be numbered two or are now three (since one of the original four has died, and the director nominated by the other stockholder is claimed thereby to have been rendered functus officio), or any other number within the provisions of the certificate of incorporation, by-laws and agreement, in the light of the proof here presented.
I therefore determine that a final order or judgment of dissolution will follow. I have, however, one further statute that I want to mention, which, in the exercise of my discretion, I propose to invoke. I refer to section 1113 of the Business Corporation Law, which provides that, ‘ at any stage of an action or special proceeding under this article ’ ’— and that refers to article 11, Judicial Dissolution — “ the court may, in its discretion, make all such orders as it may deem proper in connection with preserving the property and carrying on the business of the corporation, including the appointment and removal of a receiver under article 12 (Receivership), who may be a director, officer or shareholder of the corporation.”
I have decided to appoint two receivers and those receivers whom I shall appoint I shall name now: Jacob Lippman and *894 Herbert Ira Handman, the attorneys respectively for the petitioner and the respondent. They have now, if they accept this appointment from me, become more than attorneys for the contending shareholders and directors and even more than the usual officers of the court by virtue of their being attorneys at law. Upon the filing of a proper bond, they will become officers of the court by virtue of their being receivers appointed by the court. The question of the amount of their bond, the question as to how long the business is to continue, the question as to what employees are to be engaged (and that includes the employees who are the officers of the corporation now directed to be dissolved) and other questions having to do with the preservation of the property and carrying on the business of the corporation, will be matters for determination of the receivers, who will act under the aegis of the court and on their responsibility as specially appointed representatives of the court. The receivers will also be charged with the responsibility of presenting to the court, in due course, a plan for orderly dissolution and for the disposition of the property of the corporation, including its name and good will.