**WORLDWIDE ANESTHESIA ASSOCIATES, INC.,**
Appellant,

v.

**BRYAN ANESTHESIA, INC., Appellee.**

No. B14–86–00749CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 8, 1988.
Rehearing Denied Feb. 2, 1989.

---

J. Bradley Smith, C. Randall Michel, Bryan, for appellant.

Kelvin Adams, Bryan, for appellee.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Worldwide Anesthesia Associates, Inc., appeals the trial court's entry of an interlocutory default judgment and the jury's award of damages in favor of appellee, Bryan Anesthesia, Inc. We affirm.

Appellee sued appellant for breach of contract, promissory estoppel, and breach of contract with St. Joseph's Hospital as a third party beneficiary. Appellant filed its original answer on January 14, 1985. The subsequent events which form this appeal are as follows:

On January 29, appellee served appellant its first set of interrogatories and requests for admissions of facts.

On March 6, appellee served appellant its second set of requests for admissions of facts. On the same date, appellant moved to extend time for answering appellee's first set of interrogatories and requests for admissions and requested a hearing. The next day, March 7, appellee filed a motion to deem admitted the first set of requests.

On March 20, appellee notified appellant of its intent to orally depose appellant's president.

On March 25, the trial court ordered appellant to answer appellee's first set of interrogatories and requests by April 24. Appellee and appellant further agreed

that appellant's answers to the second set of requests would be made on the same date.

On April 22, appellant's president failed to appear for the noticed deposition and on April 23, appellant answered appellee's interrogatories and requests. Various answers were incomplete and the answers to the admissions were not signed.

On April 25, appellee again moved to deem admitted its requests for admissions of fact, to compel answers to interrogatories and, alternatively, for sanctions under Rule 215 for appellant's failure to properly answer its discovery requests or attend the noticed deposition. Appellee also gave its second notice of its intent to depose appellant's president.

On May 10, appellant's president failed to appear at the second noticed deposition.

On May 20, the trial court heard appellee's second motion for sanctions. The court ordered appellant: (1) to file with the court, by June 3, the answers to the first set of interrogatories and first and second set of requests for admissions of facts; (2) to produce its president for deposition on or before June 10; and (3) to pay appellee $600 for attorneys fees and expenses.

On June 3, appellee did not file the ordered answers with the court nor pay the imposed attorneys fees. On July 19, appellee filed a third motion for sanctions and its request to compel appellant's president to appear for continuation of his deposition. Appellee requested the court to deem the requests as admitted, strike appellant's defensive pleadings, hold appellant in contempt of court and assess further attorneys fees and expenses.

On August 28, appellant filed its answers with the court. The next day, August 29, the trial court heard appellee's third motion for sanctions. On September, 6, the court deemed the requests admitted, struck appellant's pleadings and entered a default judgment against appellant as to liability. Appellant's motion to reconsider was overruled on February 5, 1986.

Appellant's first point of error contains several complaints regarding the trial court's striking of its pleadings and entering of the default judgment. Appellant first contends that the trial court's entry of such sanctions violated its right to due process because appellee did not present any evidence in support of its motion for sanctions. This argument was not presented below, but is presented for the first time on appeal.

 It is well settled that "[c]onstitutional objections may be waived by a failure to raise them at a proper time." *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). However, purported waivers of constitutional guarantees are not lightly inferred and every reasonable presumption will be indulged against such waivers. *Mosley v. St. Louis Southwestern Ry.*, 634 F.2d 942 (5th Cir.1981), *cert. denied*, 452 U.S. 906, 101 S.Ct. 3032, 69 L.Ed.2d 407 (1982). Thus, while it is firmly established that the courts have the express or implied power to dismiss an action or enter a default judgment to ensure the orderly administration of justice and the integrity of their orders, *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936), such power is limited by the requirements of due process. *Hovey v. Elliott*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897). In *Hovey*, the United States Supreme Court held that a court could not, consistent with the requirements of due process, strike a defendant's answer and enter default as punishment for contempt. *Id.* at 413–14, 17 S.Ct. at 845. The Court's decision was based principally on the notion that a party should not be deprived of his opportunity to defend due to factors *unrelated to the merits of his case*. Thus, we will examine the entire record with regard to appellant's conduct in relation to the severity of the imposed sanction. *Haug v. Franklin*, 690 S.W.2d 646 (Tex. App.—Austin 1985, no writ).[1]

---

1. "Due process of law" is not a technical concept having a fixed content unrelated to time, place

■ Without citing authority, appellant contends that an evidentiary hearing was required before the complained of sanctions could be imposed. In light of *Inpetco, Inc. v. Texas American Bank/Houston*, 729 S.W.2d 300 (Tex.1987), we will address this complaint. Appellee provided appellant with notice of its motion and the hearing date on its motion for sanctions. Appellant was provided with an opportunity to present evidence or argue in opposition to the requested sanctions. *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 351 (D.Conn.1981). Both appellant's and appellee's counsel, as officers of the court, attended. Texas State Bar Rule, D.R. 7–106(C)(1). *Cf. Beck v. State*, 719 S.W.2d 205 (Tex.Crim.App.1986). Appellee's counsel recited his repeated attempts to discover information relating to appellee's liability and chronicled appellant's repeated noncompliance. Appellant's counsel had the opportunity to explain appellant's conduct and argue against the requested sanctions. There was no material fact in dispute; the hearing involved only the imposition of sanctions for appellant's conduct. The trial court heard the arguments of counsel and considered all the documents and orders before it to determine whether to impose the complained of sanctions. *Downer v. Aquamarine Operators, Inc.* 701 S.W.2d 238 (Tex.1985). Because the court was familiar with the case, all that due process required was notice to appellant and an opportunity to be heard.

■ Appellant next asserts that the trial court was required to make a judicial finding of bad faith, wilfullness or fault to support the imposed default judgment. In *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909), the Court held that the entry of default without an explicit finding to willfullness or fault was a permissible sanction for the defendant's failure to comply with a court order to produce documents. The Court's decision was premised on the idea that one may reasonably infer from a defendant's delay tactics and suppression of relevant evidence that the defendant's case is lacking in merit and his conduct in bad faith. *Id.* at 351, 29 S.Ct. at 380. It was appellant's burden to establish that its failure to comply with court orders was due to inability, non-wilfullness or lack of fault. *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). TEX.R.CIV.P. 168(4); 169(2); 215. *Cf. Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873 (Tex.App.—Corpus Christi 1988, writ denied).

Appellant next argues that the interlocutory default judgment was improper because appellant had answered all interrogatories before the sanction hearing. The record shows otherwise, appellant did not comply with the June 3 due date required by the trial court.

■ Appellant finally contends that its failure to answer the requests for admissions was an improper basis for the interlocutory default judgment. The unanswered requests were deemed admitted without the necessity of a court pronouncement once the answers were overdue. TEX. R.CIV.P. 169. Appellant's failure to answer interrogatories, pay assessed attorney's fees or comply with deposition requests was ample authority to impose the default judgment. TEX.R.CIV.P. 215(2). Appellant's cumulative conduct shows that the trial court did not abuse its discretion. *Downer*, 701 S.W.2d at 241. *See also Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976). Point of error one is overruled.

■ In point of error two, appellant contends that the trial court erred in deeming admitted the second set of requests for admissions of facts. According to appellant, the answers to the second set of re-

---

and circumstances; hence no hard and fast rule can be laid down as to what is, or is not, "due process of law." The term implies, instead, fundamental fairness in the context of the particular case in light of reason, precedent, history, the private interest at stake, the government's interest, and the risk that the procedures employed will lead to erroneous decisions. *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

quests were delivered to appellee on April 23, the day before the court ordered deadline. However, appellant had failed to sign these answers. Appellant argues that the requests were deemed admitted because the answers were not signed. Appellant is mistaken as to the sequence of events in this case. On May 20, the trial court extended the deadline for answering these requests until June 3. Pursuant to Rule 169 of the Texas Rules of Civil Procedure, these requests for admissions were deemed admitted without the necessity of court order after the June 3 deadline lapsed. *Shaw v. National County Mut. Fire Ins. Co.*, 723 S.W.2d 236 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Culp v. Hawkins*, 711 S.W.2d 726, (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); Tex.R.Civ.P. 169, 215(4). Point of error two is overruled.

In point of error three, appellant argues that the trial court erred in excluding evidence pertaining to the mitigation of appellee's damages. This argument is also presented for the first time on appeal and does not constitute properly preserved error. Tex.R.App.P. 52. Nonetheless, it is apparent that appellant did not offer the excluded evidence for the purpose of showing appellee's failure to mitigate damages. Appellant sought to show its inability to perform under the contract. Inability to perform, otherwise known as impossibility of performance, is a defense to a breach of contract action. *Toyo Cotton Co. v. Cotton Concentration Co. Inc.*, 461 S.W.2d 116, 118 (Tex.1970); *Foster v. Atlantic Refining Co.*, 329 F.2d 485 (5th Cir.1964); 14 Tex.Jur. *Contracts* § 292 (3rd ed. 1981). Evidence of such a defense is not allowed after the imposition of a default judgment. 25A C.J.S., *Damages* § 172(b) (1966); 14 *Tex.Jur.*, *Contracts* § 292 (3rd ed. 1981). Thus, while it is possible that this evidence could have shown mitigation of appellee's damages, as well as appellant's inability to perform, appellant did not indicate that it was offering this evidence for such purpose. When evidence is offered for two purposes, and it is admissible for one purpose but not for the other, the exclusion of such evidence is not error where the proponent of the evidence does not limit its offer

for the admissible purpose only. *Terry v. Buttercup Oil Corp.*, 487 S.W.2d 169 (Tex. Civ.App.—San Antonio 1972, writ ref'd n.r. e.); Tex.R.Civ.Evid. 105. Point of error three is overruled.

In point of error four, appellant contends the trial court erred in refusing appellant's requested issue regarding its inability to perform. The requested issue was proper only as an excuse to appellant's liability. Having been adjudged in default as to liability, inability to perform had no proper bearing on the issue of damages. 25A C.J.S., *Damages* § 172(b). Point of error four is overruled.

In point of error five, appellant contends the trial court erred in rendering judgment for $285,000 in damages because appellee's damages abated on April 30, 1985. Appellant states that after April 30, appellant was no longer working at St. Joseph's Hospital where the contract was to be performed. Appellant concludes that employment at the hospital was a "condition precedent" to the existence of the contract and thus, since this condition was not fulfilled, appellee suffered no liability after April 30.

A condition precedent is defined as an event that is to be performed *before* the agreement becomes effective or becomes binding. *Blacks Law Dictionary*, p. 266 (1979). The contract between the parties commenced in February, 1984. Appellant's employment, or the "condition precedent," had already occurred. *Id.; J. Calamari & J. Perillo, Contracts*, § 11–5 pp. 387–88 (2nd ed. 1977). Moreover, it is not necessary to discuss whether the parties contemplated the occurrence of such a condition to excuse appellant's liability. Appellant's default admitted all traversable facts as to its liability. 49 C.J.S., *Judgments* § 213 p. 376 (1947); 17A C.J.S., *Contracts* § 525(1) (1963). Point of error five is overruled.

In points of error six and seven, appellant complains of the legal and factual sufficiency of the evidence to support the jury's award of damages. Tex.R.App.P. 74(d). In assessing a no evidence point, only the evidence and the inferences there-

from which tend to support the jury's verdict are considered. All evidence and inferences to the contrary are disregarded. *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965). A challenge to the factual sufficiency of the evidence requires examination of all the evidence. If the evidence is factually insufficient to support the jury's finding on a controlling fact issue so as to be manifestly unjust, we must reverse and remand for a new trial. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

At trial, appellee's expert witness, Dr. Gilbert, testified to two methods of establishing appellee's loss of profits. He began his analysis by distinguishing between widely held and closely held corporations. He stated that a widely held corporation may have thousands of shareholders with its shares publicly traded, while a closely held corporation will have ten or less shareholders with its shares traded privately. Closely held corporations are more intimate operations with ownership and control largely shared among its shareholders. Dr. Gilbert concluded that, except for limited liability, a closely held corporation is no different than a partnership. In his opinion, the best method of analyzing appellee's loss of profits was to assess the loss of income and benefits of its shareholders. Dr. Gilbert then testified to the shareholders' prior income and benefits as reflected in their tax returns, projected appellee's growth rate, and concluded the average lost income to appellee's shareholders was $349,245 had the contract been performed.[2] Ordinary and reasonable minds may differ as to the conclusions to be reached from this testimony.

Dr. Gilbert's second method of assessing appellee's lost profits entailed an analysis of anesthesia billings at St. Joseph's Hospital during the period of time encompassed in the contract. Dr. Gilbert compared the billing amounts to "tickets" filled out by the nurse anesthetists when services were performed. There was a contrast between the value of anesthesia services reflected on the tickets and the amount reflected on

the billing summaries. Dr. Gilbert stated that, assuming there had been a clerical error in matching tickets to billings during the contract term, the gross proceeds attributable to appellee's billings (after the 60/40 profit split between the parties) would have been approximately $837,384. Dividing this sum by an averaged prior profit ratio of 16.7 percent, appellee's lost profits were assessed at $134,000. Either of these methods of assessment constituted sufficient legal, if not factual, evidence of appellee's lost profits. *Galler v. Galler*, 32 Ill.2d 16, 203 N.E.2d 577 (1965); *In the Matter of Surchin v. Approved Bus. Mach. Co., Inc.*, 55 Misc.2d 888, 889, 286 N.Y.S.2d 580, 581 (Sup.Ct.1967); *Kruger v. Gerth*, 16 N.Y.2d 802, 805, 263 N.Y.S.2d 1, 3, 210 N.E.2d 355, 356 (1965); *Helms v. Duckworth*, 249 F.2d 482 (D.C.Cir.1957); Martin Norr, *The Taxation of Corporations and Shareholders*, pp. 17–22 (1982); Fletcher Cyc. Corp., *Corporation Practice* § 9030 (1975); Note, *Statutory Assistance for Closely Held Corporations*, 71 Harv.L. Rev. 1498 (1958).

In addition to Dr. Gilbert's testimony, appellee presented receipts from its prior billings at St. Joseph's Hospital. Estimates were provided as to the portion of those prior receipts that appellee received the full fee and those fees which appellee shared. Appellee also presented evidence of payments made to M.D. anesthesiologists as part of its primary expenses. Appellant's expert testified that the amount of appellee's lost profits was considerably lower than estimated by appellee. This expert concluded that one must view only appellee's corporate tax returns and not shareholder benefits to determine appellee's profits. Appellee, on the other hand, provided testimony that no profits were reflected on its returns because bonuses, salaries and benefits were paid to the shareholders instead of retaining the income. Whether lost profits were more adequately reflected from appellee's tax returns or from shareholder benefits was for

---

**2.** It is unclear whether such projections were based on an exclusive or nonexclusive contract. However, the point is not raised and appellee's

pleadings are not a part of the record to so determine.

the jury to decide. R. Ray & C. McCormick, *The Law of Evidence* § 3 (3rd ed. 1980). The jury was instructed that lost profits meant the difference between the total amount of gross receipts which appellee would have received and the total amount of operating expenses which appellee would have incurred. *See e.g., Copenhaver v. Berryman,* 602 S.W.2d 540 (Tex. Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). The jury found that appellee's lost profits were $285,000. Although we may have reached a contrary conclusion to that of the jury's, the evidence was sufficient to support this finding. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951). Points of error six and seven are overruled.

■ In point of error eight, appellant asserts that the trial court erred in rendering judgment for appellee because the alleged contract never commenced. Appellant argues that the contract in question cannot be the basis for appellee's cause of action because it was never signed. Appellee produced several signed writings by appellant which referred to and established the existence of the disputed contract. *Braniff Inv. Co. v. Robertson,* 124 Tex. 524, 81 S.W.2d 45 (Tex.Comm'n App.1935, opinion adopted); *Plains Machinery Co., v. City of Beaumont,* 672 S.W.2d 319 (Tex. App.—Beaumont 1984, no writ); *W.B. Dunavant & Co. v. Southmost Growers, Inc.,* 561 S.W.2d 578 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). The deemed admissions, appellant's signature on the related documents and evidence of appellee's performance established the commencement of the contract. *Gruss v. Cummins,* 329 S.W.2d 496 (Tex.Civ.App.—El Paso 1959, writ ref'd n.r.e.); C. Calamari & M. Perillo, *supra,* at § 1–11, p. 18. Point of error eight is overruled.

The judgment is affirmed.