**MJR FINANCING, INC. et al., Relators,**

v.

**The Honorable John M. MARSHALL, Judge, Respondent.**

**No. 05-92-00127-CV.**

Court of Appeals of Texas, Dallas.

March 10, 1992.

**6**

John H. Cochran, Suzanne Cochran, Waylon McMullen, Dallas, for relators.

Lawrence J. Friedman, Dallas, for respondent.

Before LAGARDE, THOMAS and KAPLAN, JJ.

## OPINION

KAPLAN, Justice.

This mandamus proceeding involves a discovery dispute resulting in the imposition of "death penalty" sanctions. The issue before the trial court was whether the document production on July 19, 1990, complied with the trial court's order dated October 31, 1989. Without hearing any evidence, the trial court determined that the defendants had abused the discovery process and entered an order establishing their liability to plaintiffs. We conditionally grant the writ.

### BACKGROUND FACTS

#### 1. Underlying Lawsuit

Plaintiffs Armored Check Cashing Services of America, Inc., Mobile Bank of Fort Worth, Inc., Mobile Bank of America, and Mort Hoffman sued defendants MJR Financing, Inc. d/b/a Payroll Services of America, Terrance A. Petros, Leslie Ward, David Upshaw, Darrin Upshaw, Gene Upshaw, Phil Nimmo, and Jim Weathers.[1] Plaintiffs allege unfair trade practices and RICO violations as a result of the defendants' attempts to monopolize the mobile check-cashing business. Defendants filed

---

1. MJR, Petros, Ward, David Upshaw and Nimmo are the relators in this mandamus proceeding.

a counterclaim for attorney's fees and injunctive relief. Plaintiffs are the real parties in interest in this mandamus proceeding.

## 2. Discovery Dispute

This discovery dispute originated in October 1988 when Armored served its first request for production of documents on MJR. MJR filed a motion for protective order and Armored filed a motion to compel production. On December 20, 1988, Judge Catherine Crier of the 162nd District Court heard the discovery motions and ordered MJR to produce the documents requested by January 16, 1989. A written order was signed on February 3, 1989. MJR produced twenty-one documents.

Armored deposed Terrance Petros on July 26, 1989. During this deposition, Armored discovered that there were additional documents responsive to its first request for production that were not produced by MJR. Armored then filed a motion for sanctions and contempt against MJR for failure to comply with the February 3, 1989 order. MJR filed a motion for rehearing of the prior discovery order.

In late August 1989, Armored made six separate requests for production to MJR, Petros, Ward, Nimmo, David Upshaw and Gene Upshaw. The discovery request directed to MJR indicated that all six defendants were expected to respond. MJR and the other defendants filed a motion and supplemental motion for protective order.

On October 12, 1989, visiting judge Bill Coker heard Armored's motion for sanctions, MJR's motion for rehearing, and the defendants' motion and supplemental motion for protective order. Judge Coker first ordered MJR, Petros, Ward, Nimmo and Gene Upshaw to produce the documents requested in Armored's first request for production. The judge also ordered the defendants to produce the documents requested in Armored's second request for production. Finally, Judge Coker ordered that the document production be subject to a stipulation previously agreed to by the parties. This stipulation governed the production of documents and other discovery materials containing confidential and proprietary information. The original stipulation protected the confidentiality of Armored's records. Judge Coker ordered that the stipulation be mutual. These rulings were reduced to a written order which was signed on October 31, 1989.

On November 3, 1989, MJR, Petros, Ward, Nimmo and Gene Upshaw filed a motion for leave to file petition for writ of mandamus in this Court. The defendants sought a writ of mandamus regarding the October 31, 1989 discovery order. Leave to file was denied on November 6, 1989. The trial court denied defendants' motion to stay production the same day. The defendants then filed a motion for leave to file a petition for writ of mandamus in the Texas Supreme Court. This motion was denied on July 3, 1990. Thereafter, the parties agreed to a date for the production of documents.

On July 19, 1990, Armored appeared for a document production at MJR's office. Armored contends that MJR frustrated its efforts to conduct a meaningful review of the documents in violation of the court order. Specifically, Armored asserts that: (1) boxes of documents literally were stacked to the ceiling, (2) no chairs were made available, (3) no ladder was available to retrieve boxes stacked on upper shelves, (4) bathroom facilities were not made available, and (5) every document produced was marked "confidential." MJR and the other defendants dispute Armored's allegations surrounding the document production. In any event, Armored terminated the document production and left the premises after less than fifteen minutes.

On July 26, 1990, MJR filed a motion for protective order. Armored filed another motion for sanctions. At some point after these motions were filed, the parties reached a tentative settlement agreement that resulted in a prolonged period of inactivity.

Sometime in 1991, this suit was transferred from the 162nd District Court to the 14th District Court. The presiding judge, the Honorable John McClellan Marshall, set the case for trial on December 2, 1991.

On November 26, 1991, Armored filed yet another motion for sanctions. This motion complained of MJR's failure to comply with the February 3, 1989 discovery order and the defendants' failure to comply with the October 31, 1989 order. Specifically, this sixth motion for sanctions complained about the failure of MJR, Petros, Ward, Nimmo and Gene Upshaw to "produce the documents listed in Exhibit C, attached hereto...." Exhibit "C" is a copy of Armored's first request for production directed to MJR. Accordingly, Armored's sixth motion for sanctions appears to address only that portion of the October 31, 1989 order pertaining to its first request for production.

Judge Marshall heard Armored's sixth motion for sanctions and MJR's motion for protective order on December 6, 1991. The trial court then signed the following order on December 12, 1991:

> On the 6th day of December, 1991, came on to be heard Plaintiffs Armored Check Cashing Services of America, Inc., Mobile Bank of America and Mort Hoffman, Individually Sixth Motion For Sanctions, and Defendants MJR Financing, Inc. d/b/a Payroll Services of America, Terrance A. Petros, Leslie Ward, David Upshaw, and Phil Nimmo's Motion for Protection and Sanctions, and the Court having examined the moving papers and the pleadings, heard the arguments of counsel and *examined the evidence*, it is determined that said Defendants' Motion for Protection and Sanctions is denied and Plaintiffs' Sixth Motion for Sanctions should be granted as follows, and
> It is ordered, adjudged and decreed that the Plaintiffs' Sixth Motion for Sanctions is granted as follows:
> *Defendants failed to produce the documents in the Exhibit List, and, as sanctions for said failure, Plaintiff's case as to liability is to be taken as established.*

(Emphasis added.) Armored maintains that the "Exhibit List" refers to a list prepared by the defendants identifying certain exhibits to be introduced at trial. Armored actually placed the documents specified in the exhibit list into the December 12, 1991 order, but Judge Marshall struck through the list and wrote in the portions underlined above.

On December 11, 1991, defendants filed a motion for rehearing. This motion was denied on December 19, 1991. MJR, Petros, Ward, David Upshaw and Nimmo then filed their motion for leave to file petition for writ of mandamus. We granted leave to file on January 21, 1992.

## STANDARD OF REVIEW

### 1. Inadequate Remedy at Law

Mandamus will not lie if a party has an adequate remedy at law. *Jampole v. Touchy*, 673 S.W.2d 569, 573 & 576 (Tex. 1984, orig. proceeding). A sanction order that adjudicates the merits of a case on the issue of liability and reserves the issue of damages for trial is reviewable by mandamus. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 919–20 (Tex.1991, orig. proceeding). Remedy by way of appeal is inadequate because the entire litigation is skewed by the removal of the merits of the case from consideration. *Id.* at 919. Resolution of the dispute will be influenced, if not dictated, by the trial court's determination of the conduct of the parties during discovery. *Id.* at 919. In this case, Judge Marshall entered a sanction order that established liability and left only the issue of damages for trial.

Armored attempts to distinguish this case from *TransAmerican* because Judge Marshall did not strike any pleadings or enter a default judgment. Armored contends that the trial court merely entered an order that relators' liability would be taken as established. This distinction is without substance. Judge Marshall adjudicated the merits of the suit by sanctions, which is precisely what the trial court did in *TransAmerican*. Armored's argument is without merit. *TransAmerican* governs.

### 2. Abuse of Discretion

A writ of mandamus will issue only if a trial judge abuses his discretion. *Johnson v. Fourth Court of Appeals*, 700

S.W.2d 916, 918 (Tex.1985, orig. proceeding). A trial judge abuses his discretion when he acts without reference to any guiding rules or principles. *Id.* at 918. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge does not demonstrate that an abuse of discretion occurred. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), *limited in TransAmerican Natural Gas Corp.,* 811 S.W.2d at 919. The issue before this Court is whether Judge Marshall abused his discretion in imposing "death penalty" sanctions against the relators.

## RELATORS' ARGUMENTS

Relators argue that Judge Marshall abused his discretion in several instances. They complain that he abused his discretion (1) by refusing to hear any evidence at the December 6, 1991 hearing, (2) by refusing relators' request for a court reporter to record the December 6, 1991 hearing, (3) by entering a sanction against parties not named in Armored's motion, (4) by sanctioning relators for a reason not raised in Armored's motion for sanctions, and (5) by entering a draconian sanction in violation of *TransAmerican.* We hold that the trial judge abused his discretion by refusing to hear any evidence. Therefore, we need not address relators' other contentions.

■ Relators' first argument is that Judge Marshall abused his discretion by refusing to hear evidence in connection with their motion for protective order and Armored's sixth motion for sanctions. Both these motions focus on the October 31, 1989 discovery order and the July 19, 1990 document production. The October 31, 1989 order required relators to produce certain documents specified in Armored's first and second requests for production. The order also made the terms of a prior stipulation mutual between the parties. This stipulation set forth a detailed procedure to enable the parties to safeguard confidential and proprietary business information during the pendency of the lawsuit.

Specifically, the stipulation allowed each party to designate documents as confidential if "such material is in fact a trade secret or constitutes other confidential research, financial or other commercial information."

Armored based its sixth motion for sanctions, in part, on MJR's attempt to hide behind this confidentially order. Armored contends that, because every document produced was marked confidential, it was deprived of the opportunity to conduct a meaningful review of the documents. Armored also contends that the conduct of MJR during this document production constituted an abuse of the discovery process. Relators argue that they complied with the October 31, 1989 discovery order.

It would appear that the trial judge would have to hear some evidence in order to determine the merits of MJR's motion for protective order and Armored's sixth motion for sanctions. The stipulation vests each party with broad discretion to identify and mark certain documents as confidential. There also are significant factual disputes surrounding the conduct of the parties during the July 19, 1990 document production. Neither MJR's motion for protective order nor Armored's sixth motion for sanctions was verified or supported by affidavits. Judge Marshall could not determine whether relators complied with the October 31, 1989 discovery order without hearing evidence. The issues present in this case simply cannot be resolved in a factual vacuum.

■ The December 12, 1991 order recites that the trial court "examined the evidence" at the hearing on Armored's sixth motion for sanctions. There is a presumption that the recitals contained in a judgment are true. *Adamson v. Blackmar,* 546 S.W.2d 698, 700 (Tex.Civ.App.—Austin 1977, no writ). The presumption is rebutted when there is a conflict between the judgment and the record. *Adamson,* 546 S.W.2d at 700. In this case, both parties admit that Judge Marshall refused to hear any evidence at the sanction hearing. Counsel for Armored admitted at oral argument that she used a standardized form

to prepare the December 12, 1991 order and failed to excise the reference to the trial court's hearing evidence. Under these circumstances, we hold that the record rebuts the presumption that the recitals contained in the judgment are true. *But cf. McDonald v. Debco Corp.*, 350 S.W.2d 221, 223 (Tex.Civ.App.—Eastland 1961, no writ) (a brief cannot contradict a recital in a judgment).

Armored cites two cases for the proposition that relators were not entitled to an evidentiary hearing. Both cases are distinguishable. *Worldwide Anesthesia Assoc., Inc. v. Bryan Anesthesia, Inc.*, 765 S.W.2d 445 (Tex.App.—Houston [14th Dist.] 1988, no writ); *National Union Fire Ins. Co. v. Jones*, 762 S.W.2d 615 (Tex.App.—Fort Worth 1989, no writ). In *Worldwide Anesthesia Assoc.*, the party sanctioned had an opportunity to present evidence at the hearing on the motion for sanctions. *Worldwide Anesthesia Assoc., Inc.*, 765 S.W.2d at 448. Additionally, there was no material fact in dispute. *Worldwide Anesthesia Assoc. Inc.*, 765 S.W.2d at 448. Here, Judge Marshall denied relators the opportunity to present evidence. The facts of this case are also hotly contested. In *National Union Fire Ins. Co.*, the party sanctioned never offered any evidence. *National Union Fire Ins. Co.*, 762 S.W.2d at 617. In the instant case, relators wanted to offer evidence.

█ The imposition of "death penalty" sanctions is limited by constitutional due process. U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19; *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917. Fundamental to the concept of due process is the right to be heard. *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972); *Derbigny v. Bank One*, 809 S.W.2d 292, 295 (Tex.App.—Houston [14th Dist.] 1991, no writ); *King v. Lindley*, 697 S.W.2d 749, 752 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). The right to be heard assures a full hearing before a court of competent jurisdiction, the right to introduce evidence at a meaningful time and in a meaningful manner, and the right to have a judicial finding based on the evidence. *Fuentes*, 407 U.S. at 80, 92 S.Ct. at 1994; *Derbigny*, 809

S.W.2d at 295; *King*, 697 S.W.2d at 752. In cases involving factual disputes, we hold that due process requires that a party be allowed to present evidence before a trial court can dismiss a case or enter a default judgment as a sanction for discovery abuse.

Because Judge Marshall made factual determinations without the benefit of any evidence, he acted arbitrarily and without reference to any guiding rules and principles. We hold that the trial judge abused his discretion.

## RELIEF TO BE GRANTED

█ A mandamus proceeding is limited to determining whether the trial court abused its discretion. It does not insure that the trial court will not abuse its discretion in the future. *See Shelvin v. Lykos*, 741 S.W.2d 178, 181–82 (Tex.App.—Houston [1st Dist.] 1987, orig. proceeding). If the trial court abuses its discretion later, the aggrieved party can initiate another mandamus proceeding or perfect an appeal, depending upon the circumstances.

We conditionally grant relators' petition for writ of mandamus and direct Judge Marshall to vacate his December 12, 1991 order. Should Judge Marshall not comply with this Court's directive, the writ shall issue. All other relief requested by relators in their petition for writ of mandamus, not expressly granted, is denied.