ALLIED RESOURCES CORP., a/k/a Allied Resources Texas and George Bradford Coleman, Appellants,

v.

MO–VAC SERVICE CO., INC., Appellee.

No. 13–92–547–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 13, 1994.

Rehearing Overruled Feb. 28, 1994.

Calhoun Bobbitt, Bobbitt & Halter, San Antonio, for appellants.

J.W. Dyer, McAllen, for appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

This is an appeal from a suit on a sworn account. Appellants' pleadings were struck and a default judgment entered after they failed to comply with discovery requests and a court order. Appellants assert error in an alleged failure to give notice, alleged absence of an evidentiary hearing, and undue severity of the "death penalty" discovery sanction imposed. We affirm the default judgment.

### Factual Background

Appellee, Mo–Vac Services Company, Inc. (Mo–Vac), performed oil field services on various mineral leases at the request of appellants, during portions of 1990 and 1991. Despite timely and repeated demands, appellants refused to pay for the majority of these services. In November 1991, Mo–Vac instituted suit to recover payment. In May 1992, the complained-of default judgment was rendered against appellants.

### Standard of Review

It is within the authority and discretion of the trial court to impose just and appropriate sanctions for discovery abuse. Tex.R.Civ.P. 215; *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). Exercise of that discretion will be overturned on appeal only upon a showing of clear abuse, that is, a showing that the trial court acted without regard to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In the case of imposition of discovery sanctions, a

trial court abuses its discretion if it fails to comply with Rule 215, which includes the requirement that the sanctions be "just." TEX.R.CIV.P. 215; *TransAmerican,* 811 S.W.2d at 917. In determining which sanctions are appropriate and just, the trial court is not limited to considering only the specific violation for which sanctions are finally imposed, but may consider everything that has occurred during the history of the litigation. *White v. Bath,* 825 S.W.2d 227, 230 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

### Procedural Background

With those standards in mind, and due to the severity of the sanction imposed, we find it necessary to detail the procedural history of this litigation from its inception to the point at which the court rendered the final default.

■ The original petition, filed November 18, 1991, named "ALLIED RESOURCES CORP. A/K/A ALLIED RESOURCES TEXAS & GEORGE BRADFORD COLEMAN, Individually" as defendants. The sworn pleadings [1] alleged non-payment by "Allied" and "Coleman" of the account and asserted that "Allied" was "the alter ego of Coleman."

On December 16, 1991, the first default judgment was rendered against appellants for failure to answer or appear. On December 20, 1991, appellants filed a motion to set aside the default, claiming mistake in believing there was an oral agreement of the parties to extend the answer date. A hearing on the motion was ordered for January 30, 1992.

On December 31, 1991, Mo–Vac filed its first set of requests for admission.

On January 10, 1992, appellants filed their joint original answer, which included special exceptions, a plea in abatement, and a verified denial. While it is obvious to this Court that the term "Allied" used in the body of Mo–Vac's original petition was a clear reference to Allied Resources Corp. a/k/a Allied Resources Texas, the use of that "undefined" term was the major substance of appellants'

special exceptions. Additionally, while acknowledging that "a cause of action on a sworn account seems attempted," appellants sought an abatement on the ground that Mo–Vac's pleadings were defective because "ALLIED RESOURCES CORP.... is not known as ALLIED RESOURCES TEXAS." A hearing was set for January 30, 1992 to consider these matters.

On January 14, 1992, Mo–Vac filed and served on Allied and Coleman a subpoena duces tecum which noticed Mo–Vac's intent to depose appellants on January 23, 1992. The subpoena directed appellants to produce certain documents relating to the financial condition and the formation or incorporation of the respective entities, and also documents evidencing the ownership or participation of Coleman in "Allied" or "Allied Texas."

On January 23, 1992, appellants appeared for deposition but did not bring the requested documents. Coleman, however, promised to gather the necessary papers and forward them to his attorney to be sent on to Mo–Vac.

On January 28, 1992, appellants filed a timely response to Mo–Vac's requests for admissions. Despite the earlier attempts via special exceptions and abatement pleas to distance themselves from Allied Resources Texas, appellants admitted that the "debts of Allied Resources—Texas are paid by Allied Resources Corp." and that "George Bradford Coleman is authorized to sign checks of Allied Resources Corp. to pay the debts of Allied Resources—Texas." Appellants also admitted that an additional entity, called Equity Trust, "does business as Allied Resources—Texas," and that "George Bradford Coleman is the trustee of Equity Trust."

On January 30, 1992, the date set for hearings on the special exceptions and motions to set aside the default and to abate, the court signed an order setting aside the first default judgment with the notation on the docket sheet "all matters agreed to." Also on that date, Mo–Vac filed amended pleadings. The substance of Mo–Vac's petition remained the same, but the names of the

---

1. Appellees fulfilled all the requirements of Texas Rule of Civil Procedure 185, Suit on Account; therefore, the averments of the petition are taken as prima facie evidence.

appellants were clarified in each paragraph and an additional party, "EQUITY TRUST D/B/A ALLIED RESOURCES–TEXAS," was added as a named defendant. The alter ego allegation was reworded to include that "all three parties should be treated as one in order to prevent fraud and injustice." While the designated agent for service of process for Equity Trust was Coleman, Equity Trust was never served, and no citation was ever returned.[2]

On March 11, 1992, Mo–Vac filed a motion to compel appellants to produce the previously requested documents and for sanctions. The record shows that appellants' attorney received the motion on the same day. The record also reflects that on March 23, 1992, Coleman received a copy of the motion for sanctions, accompanied by a letter from his attorney. The letter referred to the motion and asked Coleman to produce the documents as he had promised. It indicated that, while no date had yet been set, a hearing on the motion was imminent. The letter also referred to Coleman's personal failure to return documents to the court clerk, his failure to pay attorney fees, and the fact that mail addressed to appellants was returned to the attorney marked "unclaimed." The attorney advised Coleman that unless he became more cooperative, the attorney would withdraw.

On March 24, 1992, the court signed an order setting April 23, 1992 as the date for the hearing on the motion to compel discovery and for sanctions. Notice was sent to counsel for both parties.

On April 16, 1992, appellants' attorney filed a motion to withdraw, stating appellants' failures to cooperate and to pay fees as the reasons for withdrawal. Coleman was sent a copy of the motion with notice that it would be presented at the April 23rd hearing. He was advised that he should make any objections in writing and file them with the court on or before the hearing date, and that he could attend the hearing.

On April 23, 1992, the attorneys for the parties appeared for the hearing, but Coleman did not personally appear nor file any response or objection. Before the motion to compel was heard, the court granted appellants' attorney's motion to withdraw. In responding to a question about handling the defense of the motion to compel and for sanctions, appellants' attorney responded:

> ATTORNEY: Your Honor, the only thing I can say about that and I will say is that I have returned mail certified that we sent to the defendant with this transcript and with letters requesting the discovery that they've asked for, and they've come back unclaimed.
>
> THE COURT: And you also mailed a letter to them that's in the Court's file indicating that you were going to urge your motion to withdraw?
>
> ATTORNEY: Yes, your Honor. He had notice and was told he could be here.
>
> THE COURT: Okay. You may be excused unless you wish to remain.

Mo–Vac then urged its motion requesting an order to compel production and for monetary sanctions to cover the expenses incurred in preparing and arguing the motion. In addition to knowledge of the procedural history detailed above, the court had before it the sworn pleadings of Mo–Vac which included a detailed accounting, kept in the ordinary course of business, of services rendered, sums owing, and offsets for payments made; a general unspecified sworn denial; ninety-four field tickets evidencing performance of services by Mo–Vac for "Allied Resources" or "Allied Resources Texas;" and a check returned unpaid for insufficient funds, drawn on the account of "Allied Resources Corp.," signed by Coleman, payable to the order of Mo–Vac. Of the ninety-four field tickets, thirty-six bore the personal signature of Coleman acknowledging the services, and another fifteen bore the inscription "NSA ordered by Brad Coleman."[3] The remainder were signed or designated "ordered" by purported agents of Allied or Coleman. Also on file was the admission by appellants that the returned check was an attempt to pay part of the debt owed to Mo–Vac. Additionally, the record contained the "Domestic Return Re-

---

2. We note that Equity Trust is neither named in the default judgment nor a party to this appeal.

3. Presumably NSA stands for "no signature available".

ceipt" (green card) signed personally by Coleman, evidencing receipt by appellants on March 23, 1992, of the attorney's letter which was accompanied by a copy of Mo–Vac's "Motion to Compel Answers to Discovery and For Imposition of Sanctions." On April 23, 1992, the court signed a written order directing Allied and Coleman to:

> produce the documents responsive to Plaintiff's Subpoena Duces Tecum of January 14, 1992 within thirty (30) days from the date of this order.

> IT IS FURTHER ORDERED that [Appellants] Allied Corp. and George Bradford Coleman be ordered to pay [Appellee] the sum of Five Hundred and No/100 Dollars ($500.00) within thirty (30) days from the date of this Order as sanctions for failure to comply with discovery.

> IT IS FURTHER ORDERED that in the event [Appellants] Coleman and Allied Corp. should fail to produce the requested documents or fail to pay [Appellee] the sum of Five Hundred dollars ($500.00) within thirty (30) days of this Order, that [Appellants'] pleadings will be stricken and judgment by default will be granted in favor of [Appellee].

Copies of the order were sent to the attorney who withdrew and to Allied and Coleman. Appellants failed to comply.

On May 21, 1992, Coleman filed a pro se "Motion for Continuance." It is unclear from the motion exactly what Coleman wanted continued. By that juncture, in addition to the thirty-day period set for production and payment of the five hundred dollar sanction, dates had been set for two pre-trial hearings and for the trial itself. Deadlines for completing discovery, amending pleadings and joining parties had also been set by court order. In the motion Coleman claimed no notice of the hearing on the motion to compel and asserted that appellants were "diligently trying to produce" the documents. The court set a hearing date on the continuance motion for June 22, 1992.

On May 29, 1992, a hearing was held. There is no affirmative showing in the record before this Court that appellants received any notice of this hearing. Appellants were not represented. Mo–Vac presented a sworn affidavit as evidence of appellants' non-compliance with the court's order, and affidavits relating to attorney's fees were also admitted into evidence along with various documents already on file with the court. Appellants' pleadings were then stricken, and in conformance with its prior order, the court rendered a default judgment against appellants in the amount of the sworn account, plus interest and attorney's fees.

Appellants filed a motion for new trial. They did not assert lack of notice, nor did they contend that they had complied with the order. They merely alleged mistake, claiming that the requested documents were in the possession of appellants' accountant. No reference was made to the failure to pay the monetary sanction. Appellants' motion was overruled by operation of law.

## Notice

■ Appellants' first point of error complains of lack of notice of the hearing on Mo–Vac's "motion for default." They assert that the rules and due process concerns dictate that they were entitled to notice and hearing before the court executed on its order at the May 29, 1992 hearing. We disagree.

■ We note that appellants received notice of the original motion and hearing through notice to their attorney. Notice to an attorney, acquired during the existence of the attorney-client relationship, is imputed to the client. *See, e.g., Stroud v. Casey*, 25 Tex. 740, 745 (1860); *Riordan v. Britton*, 69 Tex. 198, 7 S.W. 50, 54 (1887). While appellants' attorney was granted leave of court to withdraw his representation at the outset of the hearing, appellants had already been effectively notified of the motion and hearing.

In considering whether it is appropriate in this case to charge the appellants with notice when their attorney subsequently withdrew and left them without representation at the April 23rd hearing, we note that appellants had actual, personal notice of the motion and had, at the very least, implied notice, a month in advance that a hearing date was expected to be set "any day." Armed with the knowledge that their attorney would be withdrawing *due to their own failure to coop-*

*erate*, had appellants chosen to respond either personally or through new counsel to the motion, simple inquiry would have disclosed the date and time of the hearing, if that specific information was not already known to appellants. This is all the notice that the rule and due process require. "Means of knowledge with the duty of using them are in equity equivalent to knowledge itself." *Champlin Oil & Ref. Co. v. Chastain*, 403 S.W.2d 376, 388 (Tex.1965). To hold otherwise would confer, on those determined to delay, the ability to avoid responsibility forever; courts would be impotent against a claim of deficient notice, where a party discharged counsel immediately prior to some adversarial hearing, or, as here, where the party persisted in obstructing the efforts of counsel to the point that the attorney was forced to withdraw.

While Texas Rule of Civil Procedure 215 also requires a "hearing" before the imposition of sanctions, we agree with those courts of appeal who have held that all that Rule 215 and due process require are notice and the opportunity to be heard. *See Worldwide Anesthesia Assocs., Inc. v. Bryan Anesthesia, Inc.*, 765 S.W.2d 445, 448 (Tex.App.—Houston [14th Dist.] 1988, no writ). Appellants had fair notice of the motion and hearing, were afforded an opportunity to be heard, but chose not to avail themselves of that opportunity.

Rule 215 empowers the court to impose any number of a variety of sanctions, including striking pleadings, rendering default judgments, and imposing monetary fines. TEX.R.CIV.P. 215(2)(B) & (3). A court is not compelled to order compliance before sanctioning and is free to sanction immediately upon a showing that a party has failed to comply with proper discovery requests. *Id.* The court in this case could have stricken appellants pleadings and rendered the default at that April 23rd hearing. *Id. See also Drozd Corp. v. Capital Glass & Mirror*, 741 S.W.2d 221, 224 (Tex.App.—Austin 1987, no writ); *City of Houston v. Arney*, 680 S.W.2d 867, 872 (Tex.App.—Houston [1st Dist.] 1984, no writ). The court, however, decided to afford appellants a final opportunity to produce the documents before the

court executed on its ordered imposition of the "death penalty" sanction. That forbearance cannot now be distorted into a requirement for a second round of "notice and hearing." We hold, therefore, that a sanction order may be conditionally granted, after notice and hearing, if the terms of the order are written in clearly unambiguous, self-executing form. There is no doubt that the order in this case is unambiguous and self-executing. The order recites that the pleadings *"will be* stricken and judgment by default granted" if appellants did not comply within a time certain (thirty days). Appellants received a copy of the order.

We distinguish the order issued here from a general order to all parties that contains a statement that:

> failure to file the pretrial order ... *may*, without further notice, result in the prompt dismissal of all claims, striking out of pleadings, rendition of default judgment, and restrictions on evidence admitted at trial.

*See First Dallas Petroleum, Inc. v. Hawkins*, 727 S.W.2d 640, 647 (Tex.App.—Dallas 1987, no writ) (emphasis added) (must provide "notice and hearing" before imposition of sanctions based on general order). By contrast, appellants here were on actual notice that on day thirty-one a default *would* be rendered against them unless the documents were produced and the money paid. This places the burden squarely on the party guilty of the abuse, and affords the court a means to possibly avoid the most drastic sanctions without providing the offending party with an additional vehicle for delay should compliance not be forthcoming.

We hold, therefore, that the court acted within its discretion in executing its prior order without additional notice to appellants. Appellants' first point of error is overruled.

### Evidentiary Hearing

Appellants' second point of error complains that, notwithstanding the striking of their pleadings, the default judgment is erroneous because no evidentiary hearing was held. This was a simple suit on an open account for services rendered. Mo–Vac's pe-

tition was properly verified and conformed in all respects to the requirements of a "Suit on Account" (formerly "Suit on Sworn Account"). *See* TEX.R.CIV.P. 185. With appellants' sworn pleadings stricken, the averments of Mo–Vac's petition were uncontested prima facie evidence of its claim for damages on the account. *See Id.;* TEX.R.CIV.P. 93(10). Mo–Vac was entitled to rely on its sworn pleadings and recover on the account. *See, e.g., Notgrass v. Equilease Corp.,* 666 S.W.2d 635, 639 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (plaintiff entitled to judgment on account after defensive pleadings stricken for discovery abuse); *Zemaco, Inc. v. Navarro,* 580 S.W.2d 616, 620 (Tex.Civ.App.—Tyler 1979, writ dism'd) (without effective denial, verified pleading of account constituted prima facie evidence entitling plaintiff to recovery). Here the account was both sworn to and sufficiently itemized so as to allow the court to determine the exact amount of damages. No further evidence was required. *See, e.g., Stephenson v. Corporate Servs., Inc.,* 650 S.W.2d 181, 184–85 (Tex.App.—Tyler 1983, writ ref'd n.r.e.); *Jeff Robinson Bldg. Co. v. Scott Floors, Inc.,* 630 S.W.2d 779, 780–81 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Appellants' second point of error is overruled.

### Justness of Sanction

▮ Appellants' third point asserts that the "death penalty" sanction imposed was too severe and, therefore, erroneous. Recalling that our standard of review is abuse of discretion, *TransAmerican,* 811 S.W.2d at 917, and that the court is free to consider everything that has occurred during the pendency of the suit, *White,* 825 S.W.2d at 230, we disagree.

▮ Imposition of such a severe sanction is permissible where it is "just." TEX.R.CIV.P. 215(2)(B); *TransAmerican,* 811 S.W.2d at 917. To be "just," a direct relationship must exist between the offensive conduct and the sanction, such that the punishment is visited upon the true offender and directed towards remedying the prejudice caused to the innocent party. *TransAmerican,* 811 S.W.2d at 917. Additionally, it should be clear that less stringent sanctions

would not promote compliance. *Id.* We hold that imposition of the "death penalty" sanction in this case was "just."

Appellants' entire course of action throughout this suit was marked by delay, avoidance and obstruction of process. After an initial failure to answer with resultant default, appellants filed, on frivolous grounds, motions to abate and special exceptions. While admissions revealed otherwise, appellants attempted to interpose a "mistaken identity" or "lack of privity" defense, and kept secreted the very documents that were needed to establish the interrelationship, or lack thereof, of the separate entities and individuals named as defendants. Appellants so hindered their own attorney's efforts that he withdrew from representation. Counsel cannot be faulted here. The appellants are the real offenders.

We note that this is not the case where the appellee has fueled the flames of some great discovery battle and is attempting to blindside justice and achieve "trial by sanctions." *See Id.* at 918. Appellants have never filed any objection to, or motion for protective order from, the discovery sought by appellee. Mo–Vac has dealt, as well as it could, with appellants' delays and demands. It agreed to set aside the first default and voluntarily amended its petition to rectify the semantic "defects." Mo–Vac, fully entitled to seek immediate sanctions upon non-compliance with its discovery request, moved instead for an order to compel before seeking more aggressive sanctions. Appellants, however, persisted in blocking Mo–Vac's attempts to procure the documents relevant to appellee's claims and appellants' asserted defenses. The trial court could logically conclude that appellants' continued hindrance of the discovery process justified a presumption that its defenses lacked merit. *Id.* Striking of appellants' defensive pleadings and rendition of default is, therefore, the most appropriate sanction on these facts.

As to the advisability of less stringent sanctions, we note that other measures to promote compliance were tried and failed. The first default was set aside and matters were "agreed to;" Mo–Vac and appellants' attorney waited patiently for appellants to

"gather" the documents; Mo–Vac threatened with its motion to compel; appellants' attorney threatened to withdraw; appellants' attorney did withdraw; and the trial court, when finally ordering compliance, first imposed a small monetary sanction, but also gave appellants a grace period before more drastic sanctions would issue. In short, neither compromise, patience, cajoling, fines, nor threats were successful in achieving appellants' compliance. We hold that the trial court acted within its discretion in determining that imposition of the "death penalty" sanction in this case was both appropriate and just. We overrule appellants' third point.

#### Damages For Delay By Appeal

Appellee requests an additional ten percent of damages pursuant to Texas Rule of Appellate Procedure 84 for delay by appeal. Such an award requires a determination by this Court that the appeal was taken for delay and was without sufficient cause. TEX.R.APP.P. 84. In making that determination, we review the case from the advocate's point of view and decide whether he had reasonable grounds to believe that the case would be reversed. *Jones v. Colley,* 820 S.W.2d 863, 867 (Tex.App.—Texarkana 1991, writ denied). While none of appellants' points were sustained, they filed a complete record and brief presenting arguable error and authority on the notice and excessiveness of sanctions points. *See Hicks v. Western Funding, Inc.,* 809 S.W.2d 787, 788 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (listing factors used to indicate appeal filed without sufficient cause and only for delay). We, therefore, fail to conclude that the grounds for appeal were unreasonable. We overrule appellee's request for Rule 84 damages.

We AFFIRM the default judgment.